## In re CAESARS PALACE SECURITIES LITIGATION.
### No. 110.

United States District Court,
S. D. New York.

May 23, 1973.

Sidney Dickstein, Anthony Troy, Dickstein, Shapiro & Galligan, Washington, D. C., for plaintiff Brooks.

David B. S. Cohen, Abraham Glickman, New York City, for plaintiff Fenichal.

David Berger, Leonard Barrack, Gerald Jay Rodos, Philadelphia, Pa., for plaintiff Cope.

Robert Kornreich, Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs Kraut and Gregorio.

Judah Labovitz, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., Stroock, Stroock & Lavan, New York City, for plaintiff Silver.

Irving Bizar, Demov, Morris, Levin & Shein, Ira J. Sands, New York City, for plaintiff Margoles.

Alan Pepper, Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff Channing Securities, Inc.

Kevin Duffy, William Kuehnle, Securities & Exchange Commission, Washington, D. C., Terry N. Christensen, Wyman, Bautzer, Rothman & Kuchel, Beverly Hills, Cal., Jacob Heller, Weiss, Bronstein, Rosenthal & Heller, New York City, Bruce Kauffman, Carl Hanzelik, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., for defendant Desert Palace, Inc., Desert Palace, and Desert Palace individual defendants.

Guy Quinlan, David W. Bernstein, Royall, Koegal & Wells, New York City, for defendant Caesars World, Inc., and Caesars World individual defendants.

Walter Beebe, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Harris, Kerr.

Jack David, Willkie, Farr & Gallagher, New York City, for defendants Laventhol, Krekstein, Horwath and Horwath.

## MEMORANDUM OPINION

WEINER, District Judge.

The above captioned case is before this Court pursuant to 28 U.S.C. § 1407 on the Order of the Judicial Panel on Multidistrict Litigation filed on December 12, 1972 for the purposes of coordinated or consolidated pretrial proceedings.

The eleven individual cases[1] which constitute this litigation primarily involve alleged violations of Sections 10(b), 13, 14(a), and 18 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78m, 78n(a), and 78r, Rule 10b-5 of the Securities and Exchange Commission, and Sections 11, 12, and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, and 77q, coupled with various allegations of violations of other sections of the Securities acts and common law.

It is not necessary, nor would it be helpful, to embark upon a detailed examination of the quite complex factual bases of each suit. It is sufficient to note, at this time, that eight of the cases are predicated upon a complaint brought by stockholders of Lum's Inc. (now known as Caesar's World) allegedly for damages suffered by them which resulted from the sale, on September 30, 1969, of Caesars Palace to Lum's Inc. Seven of these actions contain class allegations.[2] Two other suits, *Kraut* and *Gregorio*,

are derivative actions filed on behalf of Lum's Inc.

Essentially, the plaintiffs' complaints center around allegations that the January 12, 1971 registration statement, the September 30, 1969 registration statement, and the Lum's 1969 Annual Report were materially false and misleading and that the defendants disseminated false and misleading information concerning the financial status of Caesars Palace which prevented investors from obtaining adequate information in these matters in violation of § 10(b) and Rule 10b-5. It is further generally alleged that false and misleading statements were made by the defendants in August of 1969 in connection with the solicitation of proxies from stockholders of Lum's Inc. in order to approve the Caesars Palace acquisition in violation of § 14(a) and Rule 14a-9 of the 1934 Act. In addition, the derivative suits allege breaches of fiduciary duty by certain directors and improper performance by defendant-accountants of duties imposed upon them by the Securities Acts.

## MOTIONS TO TRANSFER

Various defendants, including Desert Palace, Desert Palace, Inc., and numerous individual defendants, have requested this Court to transfer six of the lawsuits involved in this litigation, *Brooks, Fenichal, Kraut, Gregorio,* Margoles v.

---

1. The transfer Order of the Multidistrict Panel dealt with the following matters: Rachel Brooks et al. v. Caesars World, Inc., et al., C.A. No. 71 Civ. 5342 (S.D. N.Y.); Samuel L. Fenichal v. Jerome Zarowitz, et al., C.A. No. 71 Civ. 5375 (S.D.N.Y.); Matthew Margoles v. Earl Powell, et al., C.A. No. 72 Civ. 101 (S.D. N.Y.); Antone F. Gregorio v. Jay J. Sarno, et al., C.A. No. 71 Civ. 5470 (S.D. N.Y.); Lawrence Kraut v. William H. McElnea, Jr., et al., C.A. No. 71 Civ. 5687 (S.D.N.Y.); Edward Silver, et al. v. Lum's Inc., et al., C.A. No. 72 Civ. 1145 (E.D.Pa.); Securities & Exchange Commission v. Lum's Inc., et al., C.A. No. 71 Civ. 5323 (S.D.N.Y.); Matthew Margoles, et al., v. Lum's Inc., et al., C.A. 72 Civ. 664 (S.D.N.Y.); Ruthellen Cope, et al. v. Caesars World, Inc., et al.,

C.A. No. LV-1808 (D.Nev.); Mark Matthews v. Lum's Inc., et al., C.A. No. 72-617-Civ.-NCR (S.D.Fla.). One other case, Channing Securities, Inc., et al. v. Caesars World, Inc., et al., C.A. No. 72 Civ. 4128 (S.D.N.Y.), which was originally filed in the Southern District of New York and was not included in the Order of the Multidistrict Panel, is being considered in conjunction with the above cases pursuant to a transfer of the matter from Judge Lasker of the Southern District to this Court.

2. The four cases not containing class allegations are *Kraut* and *Gregorio*, the derivative suits, and *Securities & Exchange Commission* and *Channing Securities*.

Powell, and *Silver* to the District of Nevada pursuant to 28 U.S.C. § 1404(a) which provides that:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In support of their position the movants point out that, as those acts and transactions which comprise the basis of the alleged § 10(b) and Rule 10b–5 violations occurred in Las Vegas, Nevada, suit could have been brought against all defendants in that district; that the material records are located in Nevada; that a great number of witnesses and defendants are located in Nevada and that the expense and inconvenience of traveling to New York for depositions and trial would be excessive; that compulsory process for the attendance of witnesses would be available to a far greater degree in Nevada; and that 28 U.S.C. § 1404(a) empowers a district court to authorize transfer if it is warranted to promote the interests of justice. Further, defendants point out that the possibility of an earlier trial in Nevada is a consideration which weighs in favor of transfer and that, given the fact that the bulk of the transactions which are involved in these matters occurred in Nevada, the plaintiff's choice of forum is entitled to *de minimus* weight.[3]

Plaintiffs, in opposition, argue that the plaintiff's choice of forum is entitled to great weight; that transfer of these cases would result in fragmentation, duplication, and waste;[4] that the *Cope* action should be transferred to New York from Nevada; that a number of parties and witnesses, including Lum's underwriter and plaintiffs' accountants, are present in New York and would only be available with great difficulty in Nevada; that Caesar's Palace has an office in New York and trades on the New York Stock Exchange; that a number of witnesses are in Florida; and, that the files of the Securities Exchange Commission, which form a large portion of the plaintiffs' case, are in New York. In addition, the plaintiffs point out that transfer would seriously deplete their financial situation and that they would be willing to conduct depositions and to accept copies of documents in Nevada and Florida in order to keep the balance of expenses within permissible limits.

■ It is clear that a judge to whom cases are assigned by the Judicial Panel on Multidistrict Litigation for pretrial proceedings has the power to issue orders directing transfer of cases from the judicial districts in which they were filed to another district for trial if the convenience of parties and witnesses and other relevant factors warrant such action. Pfizer, Inc. v. Lord, 447 F.2d 122 (2d Cir. 1971); In Re Seeberg-Commonwealth United Litigation, (S.D.N.Y. 1970, M–19–95); *cf.* Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L. Ed.2d 945 (1964). However, given the limited record which is before us at this time with regard to the conflicting viewpoints outlined above, it is our opinion that further discovery and deposition testimony must be forthcoming prior to our determination of these transfer motions. Therefore, in the exercise of our discretion, we will at this time, decline to pass on this question until discovery testimony furnishes a proper foundation for our ruling.

## MOTION TO CONSOLIDATE

■ The plaintiff in Margoles v. Lum's Inc. has requested this Court to order consolidation [5] of his case with five

---

3. One case which is involved in this multidistrict litigation, Cope v. Caesars World, Inc., was originally filed in the District of Nevada.

4. Two other actions, Margoles v. Lum's, Inc. and Securities & Exchange Commission v. Lum's Inc. are presently in the Southern District of New York and are not involved in this transfer motion.

5. This Court has the authority to order consolidation pursuant to Fed.R.Civ.P. 42 (a): "When actions involving a common

other cases presently before us in this same litigation, *Kraut, Brooks, Gregorio, Margoles v. Powell,* and *Fenichal,* on the grounds that each of these suits attack the same basic transactions and involve common parties and issues.

Movant places heavy reliance upon the Second Circuit's discussion of consolidation in a stockholder's derivative action, MacAlister v. Guterma, 263 F.2d 65, 68 (2d Cir. 1958), and upon a number of related stockholder class actions similar to the instant cases in which consolidation has been approved, *see, e. g.,* Feldman v. Hanley, 49 F.R.D. 48 (S.D.N.Y. 1969); Abrams v. Occidental Petroleum Corp., 44 F.R.D. 543 (S.D.N.Y.1968); Fields v. Wolfson, 41 F.R.D. 329 (S.D. N.Y.1967), urging that the dangers envisioned by the *MacAlister* court, duplication of suits, increased costs to the litigants, delay, and ineffective use of judicial time will inevitably result if such action is not taken in their case. In addition, plaintiff contends that inconsistent results and conflicting class determinations would result from a failure to consolidate.

Defendants' opposition to consolidation is premised primarily upon the proposition that, although the claims made in Margoles v. Powell are essentially duplicative of those made in Margoles v. Lum's, Inc., the converse is not true and, therefore, consolidation should not be granted. In effect, it is the contention of the defendant that Margoles v. Lum's, Inc. includes claims relating to franchising and restaurant and related activities which are not common to the other suits and would only cause confusion if consolidation with them was permitted.

In answer, plaintiff argues that the fact that total identity of issues and parties is not present does not foreclose consolidation, citing Skirvin v. Mesta, 141 F.2d 668 (10th Cir. 1944), and other

related cases, so long as substantial identity of parties and issues is present.

Again, as in the foregoing motions to transfer, it is our conclusion that it would be inappropriate for us to attempt to determine this question given the incipient posture of the present proceedings. Therefore, in the exercise of our discretion, we will likewise decline to pass upon consolidation until further discovery has been completed and the true issues have been further clarified to our satisfaction.

## MOTION TO DISMISS: CHANNING SECURITIES

In *Channing Securities,* the principal sellers-defendants, including Desert Palace, Inc., Desert Palace, and numerous individual defendants, have filed motions to dismiss pursuant to Fed.R.Civ. P. 12(b)(6). Plaintiffs Channing Securities, Inc. and Channing Shares, Inc. (hereinafter "Channing"), are open-end diversified management investment companies which purchased $3,500,000 and $6,500,000, respectively, in principal amount of 7% convertible senior subordinated debentures of defendant Caesar's World, Inc. in September of 1969 pursuant to a registration statement and prospectus issued by Caesar's World. The moving defendants were shareholders, employees, officers, and/or partners, or were otherwise connected with the corporation and partnership which sold the Caesars Palace Hotel and Casino to Caesar's World. Essentially, plaintiffs allege that the September, 1969 registration statement and prospectus contained various misstatements and omissions in violation of § 10(b) of the 1934 Act and of §§ 11, 12(2), and 17(a) of the 1933 Act. The principal seller-defendants have filed motions to dismiss plaintiffs' first, second, third and fourth causes of action. Each of these motions will be discussed in turn.

question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all

the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

## I

Defendants claim that Channing's allegations of violations of § 10(b) and Rule 10b–5 are deficient in that there is no allegation of scienter in the complaint, and that there was no duty on the part of any of the moving defendants to disclose information to Channing. Plaintiffs argue, to the contrary, that scienter is sufficiently alleged in their complaint and that privity is not a necessary element of a claim under § 10(b) or Rule 10b–5.

■ We agree with the plaintiffs that, without attempting to determine the troublesome and much debated question of whether or not scienter is a requisite element of a 10b–5 violation, see, e. g., Heit v. Weitzen, 402 F.2d 909, 913–914 (2d Cir. 1968); SEC v. Van Horn, 371 F.2d 181, 185 (7th Cir. 1966); Weber v. C. M. P. Corp., 242 F. Supp. 321 (S.D.N.Y.1965); VI Loss, Securities Regulations, 3883–88 (Supp. 1969), the allegation that defendants did "intentionally, wilfully, and knowingly" [6] make untrue statements of material facts would be more than sufficient to state a private claim for damages under 10b–5. See Globus v. Law Research Service, Inc., 418 F.2d 1276, 1291 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); Heit v. Weitzen, supra, 402 F.2d at 914; cf. Ellis v. Carter, 291 F.2d 270, 274 (9th Cir. 1961).

■ We similarly must disagree with movants' contention that privity is a prerequisite to recovery under § 10(b) and Rule 10b–5 and that they, thereby, had no duty to disclose information to the plaintiffs. In Iroquois Industries v. Syracuse China Corp., 417 F.2d 963, 967–968 (2d Cir. 1969), cert. denied, 339 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970), the Second Circuit carefully analyzed the relevant case law and concluded that liability under 10b–5 does not depend on privity between plaintiff and defendant. The reasoning of the court in Freed v. Szabo Food Service, Inc., CCH Fed.Sec.L.Rep. ¶ 91,317 at 94,363–4–5 (N.D.Ill.1964), is persuasive:

"The requirement of privity is no longer strictly enforced, and instead courts are requiring rather that the plaintiff allege that he has relied upon misleading statements uttered by the defendants concerning the securities in question; that he has purchased the securities from whatever source, relying upon these misleading statements; and that through such purchase he has suffered damage . . .

. . . . . .

". . . To hold otherwise would allow a corporation whose stock is issued publicly to make misrepresentations concerning the stock without any fear of liability as long as its stock was only sold to the public in the market by underwriters or others. Such a rule would ignore the realities of the public securities market, and such was certainly not the intention of Congress."

We, therefore, have no doubt that, under the prevailing state of the law, the absence of privity does not amount to a fatal defect of proof in a 10b–5 situation. Cochran v. Channing Corp., 211 F.Supp. 239, 245 (S.D.N.Y.1962); see, e. g., Heit v. Weitzen, supra, 402 F.2d at 913; VI Loss, supra, at 3893–97 (citing cases at 3894); Ruder, Pitfalls in the Development of a Federal Law of Corporations by Implication through Rule 10b–5, 59 Nw.U.L.Rev. 185, 196–206 (1964).

However, no court has yet advocated an unconditional abandonment of privity, and it is axiomatic that some legally cognizable relationship, perhaps akin to the "semblance of privity" concept espoused in Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701, 706 (S.D.N.Y.1951), must be present between the parties before liability may be imposed. As Judge Friendly has intimated in SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 867 (2d Cir. 1968) (concurring opinion), if this underlying

---

6. Complaint in *Channing*, ¶ 36.

concept of privity was totally disregarded, a burden out of all proportion to the fault involved might be cast upon anyone who makes false assertions in the marketplace. It is our feeling that, given our reading of the complaint [7] and the basic posture of these proceedings, an actionable relationship exists between the parties to this motion, *cf.* Drake v. Thor Power Tool Co., 282 F.Supp. 94, 104 (N.D.Ill.1967); Gann v. Bernz-Omatic Corp., 262 F.Supp. 301 (S.D.N.Y.1966); Cochran v. Channing, *supra,* and that dismissal is not warranted at this time. However, if, within the course of discovery proceedings, information becomes available to the defendants which leads them to conclude that a total absence of privity exists, as defined in the case law in this area, they may resubmit this question to the Court for our consideration.

## II

■ The defendants argue that the claims made under §§ 11 and 12(2) of the 1933 Act, Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*(2), are barred by the applicable Statute of Limitations, Securities Act of 1933, 15 U.S.C. § 77m, which requires the initiation of such actions within one year after the discovery of the untrue statement or omission or within one year after such discovery should have been made by the exercise of reasonable diligence or, in any event, in case of liability under § 11, not more than three years after the security was bona fide offered to the parties, and, under § 12(2), not more than three years after the security was sold. Plaintiffs contend that they were not on notice of any wrongdoing until the public disclosure of the SEC investigation in December of 1971, less than a year before the

action was commenced, and have, thereby, commenced their suit within the limits established by the statute.

As the instant proceedings are yet in their early stages of development, any attempt by this Court to dispose of these conflicting factual contentions would be an exercise in pure guesswork. Clearly, further discovery is required before either party is able to produce proof sufficient for us to render a decision. Thus, our determination will be held in abeyance until such time as this information is brought to our attention by the parties.

■ On this same point, defendants state that the plaintiff has failed to allege facts indicating that their action was timely brought under the Statute of Limitations and that such pleadings are required by the courts in actions under §§ 11 and 12(2) of the 1933 Act. Phillips v. J. H. Lederer & Co., Inc., CCH Fed.Sec.L.Rep. ¶ 91,039 (S.D.N.Y.1961) (failure to allege the time or circumstances of discovery are "material allegations which must be set forth in the complaint where an action is brought more than one year after the sale."); Buchholtz v. Renard, 188 F.Supp. 888, 892 (S.D.N.Y.1960); Premier Industries, Inc. v. Delaware Valley Financial Corp., 185 F.Supp. 694, 696 (E.D.Pa. 1960); III Loss, *supra,* at 1744–45 (2d ed. 1961). The relevant decisions have consistently interpreted § 77m as substantive rather than procedural, *e. g.,* Rosenberg v. Hano & Co., 26 F.Supp. 160 (E.D.Pa.1938), in the sense that it is viewed as setting forth an essential ingredient of a private cause of action based upon §§ 11 and 12(2). As a result, a failure to plead facts in conformity with this section is fatal to such claims. Premier Industries, Inc. v. Del-

7. Plaintiff Channing, in its complaint, has, to our mind, adequately stated a substantive cause of action under Rule 10b–5. Paragraph 36 charges the defendants with knowingly making untrue statements of material facts in connection with the sale of debentures to Channing, paragraphs 38 and 39 enumerate a number of the alleged false and misleading statements, paragraph 40 alleges Channing's reliance upon the completeness and accuracy of defendants' statements in its purchase of securities, and paragraph 44 requests the damages which allegedly resulted from violations of § 10(b) and Rule 10b–5.

aware Valley Financial Corp., *supra*; Osborne v. Mallory, 86 F.Supp. 869 (S. D.N.Y.1949); Fischman v. Raytheon Mfg. Co., 9 F.R.D. 707 (S.D.N.Y.1949), rev'd on other grounds, 188 F.2d 783 (2d Cir. 1951).

Given plaintiff's failure to affirmatively plead such facts, defendant urges this Court to dismiss Channing's second and third causes of action. However, in light of the liberal pleading requirements established by the Federal Rules, we are of the opinion that such action would be somewhat harsh. *See* Wright, Federal Courts 239 (1963). Plaintiff is, therefore, given leave to amend his complaint to include specific allegations in conformity with 15 U.S.C. § 77m in connection with his claim for relief under §§ 11 and 12(2)· of the 1933 Act. *See* Premier Industries v. Delaware Valley Financial Corp., *supra*, 185 F.Supp. at 697.

### III

The defendant-movants next argue that they cannot be held liable as a matter of law for violation of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), as they are not within the category of individuals to whom this section is applicable.

Section 12(2) of the Act provides:

"Any person who—

> . . . . . .
>
> (2) offers or sells a security . . ., by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omissions), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns such security."

■ The difficult question which is specifically raised by this motion to dismiss, whether persons who allegedly conspired with or aided and abetted other persons to violate § 12(2)[8] are subject to liability under this section of the 1933 Act, has been confronted by few courts and commentators prior to this time. Having due regard for the purposes and policies underlying the Act and recognizing that the issue presents an important question in the ever-developing area of securities regulations, we hold that persons who do no more than conspire in or aid and abet a violation of this type are not necessarily excluded from the imposition of § 12(2) liability.[9]

---

8. See Complaint in *Channing* at ¶ 57.

9. Many decisions dealing with § 12(2) have founded liability on persons other than sellers or offerors by reference to the "control" provisions of § 15 of the Securities Act, 15 U.S.C. § 77*o*, which reads as follows:

"Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

However, such allegations are not present in the instant complaint. *See,* *e. g.,* Johns Hopkins University v. Hutton, 422 F.2d 1124, 1130 (4th Cir. 1970); Dorfman v. First Boston Corp., 336 F.

Numerous courts have confronted the offeror-seller requirement of § 12(2) and have concluded that liability under this section is not limited solely to those parties who technically are the sellers or offerors of the securities in question "in the mystical sense of passing 'title'." III Loss, *supra*, at 1713–14, and cases cited therein.

In a recent discussion of the extent of liability under § 12, the Fifth Circuit Court of Appeals, in Hill York Corp. v. American International Franchises, Inc., 448 F.2d 680, 692–693 (5th Cir. 1971), held that a seller, under this section, is not required to be the person who passes title, and noted that "the term 'seller' has sometimes been accorded a broader construction under Section 12(2) than under Section 12(1)." [10] *Id.* at 692. Although liability in *Hill York* was premised on § 12(1), the Court expressly formulated a standard applicable to both §§ 12(1) and 12(2):

"[W]e adopt a test which we believe states a rational and workable standard for imposition of liability under either section. Its base lies between the antiquated 'strict privity' concept and the overbroad 'participation' concept which would hold all those liable who participated in events leading up to the transaction. *See* Wonneman v. Stratford Securities Co., Inc., CCH Fed.Sec.L.Rep. ¶ 90,923 (S.D.N.Y. 1959) and Wonneman v. Stratford Securities Co., Inc., CCH Fed.Sec.L.Rep. ¶ 91,034 (S.D.N.Y.1961). We hold that the proper test is the one previously forged by the court in Lennerth v. Mendenhall, *supra*, [234 F. Supp. 59 (N.D.Ohio, E.D.1964)]. '. . . the line of demarcation must be drawn in terms of cause and effect: To borrow a phrase from the law of negligence, did the injury to the plaintiff flow directly and proximately from the actions of this particular defendant?' 234 F.Supp. at 65. *See also* Nicewarner v. Bleavins, *supra*, [244 F.Supp. 261, 266 (D.Colo. 1965)]." *Id.* at 692–693.

Undoubtably, the language of § 12(2) envisions the presence of some "element of privity." But the *Hill York* decision, coupled with a recognition of the remedial intent of the federal securities laws, is persuasive authority for the expansion of this concept of privity beyond the narrow bounds which a strict interpretation of the offeror-seller requirement might otherwise dictate.

A review of the decisions touching on this issue clearly evidences the fact that gradual but progressive expansion of this concept has taken place. *See* III Loss, *supra*, at 1712–21: VI Loss, *supra*, at 3834–42. Brokers have repeatedly been included within the coverage of both parts of § 12, whether the broker represents both parties to the transaction or only the seller. Cady v. Murphy, 113 F.2d 988 (1st Cir. 1940), cert. denied, 311 U.S. 705, 61 S.Ct. 175, 85 L. Ed. 458; Wall v. Wagner, 125 F.Supp. 854, 858 (D.Neb.1954), aff'd without consideration of the point sub nom. Whittaker v. Wall, 226 F.2d 868 (8th Cir. 1955); Valve Line Fund, Inc. v. Marcus, CCH Fed.Sec.L.Rep. ¶ 91,523 at 94,969 (S.D.N.Y.1965). And as Prof. Loss states, once the liability of a broker under § 12 is established, "it is hard to distinguish the case of an officer or director or employee or other non-broker agent of the seller who actively participates in the sale." III

Supp. 1089 (E.D.Pa.1972); Winter v. D. J. & M. Investment and Construction Corp., 185 F.Supp. 943, 946–947 (S.D. Cal.1970); III Loss, *supra*, at 1719–20. It is not the understanding of this Court, after examination of the leading cases which discuss § 15, that § 15 provides an exclusive method of imposing liability upon secondary defendants under § 12(2). *See* Johns Hopkins University v. Hutton,

297 F.Supp. 1165, 1211–1213 (D.Md. 1968), aff'd, 422 F.2d 1124 (4th Cir. 1970).

10. *See also* the definitions of "sale" and "offer to sell" in 15 U.S.C. § 77b(3). These terms were meant to be used in their broadest sense. Roe v. United States, 316 F.2d 617, 620 (5th Cir. 1963).

Loss, *supra,* at 1716. *See* Lennerth v. Mendenhall, 234 F.Supp. 59 (N.D.Ohio 1964); Wall v. Wagner, *supra*; *cf.* Nicewarner v. Bleavins, 244 F.Supp. 261, 266 (D.Colo.1965); Wonneman v. Stratford Securities Co., CCH Fed.Sec.L.Rep. ¶ 91,034 at 93,459–60 (S.D.N.Y.1961).

In Katz v. Amos Treat & Co., 411 F. 2d 1046 (2d Cir. 1969), one of the defendants, Wofsey, an attorney for the defendant brokerage corporation and special counsel for the issuing corporation, was charged with violations of § 12 of the 1933 Act. Although Judge Friendly, in his opinion, conceded that the attorney had not taken any initiative in the offering, "the evidence clearly warranted the inference that on both occasions in April 1961, he had not simply answered Katz' questions, but had placed Treat in a position to tackle Katz for the money." *Id.* at 1053. Concluding that Wofsey "had been a party to a solicitation," the Court held that liability under § 12(1) could be present. In addition, as a result of the many misrepresentations which had allegedly been made to Katz by each of the defendants including Wofsey, the Court found liability to be present under §§ 12(2) and 17(a) of the 1933 Act and § 10(b) of the 1934 Act:

"[W]e think the plaintiff made a case sufficient for submission to the jury that statements approximating *one or more of [the misrepresentations] were made or adopted* by or on behalf of each of appellees [*sic*], who knew or ought to have known of their falsity." *Id.* at 1055. (emphasis added)

Furthermore, the recitation of facts in *Katz* indicates that shares of stock were neither transferred by or through Wofsey nor that the attorney in any way benefited monetarily as a result of the transaction.

The *Katz* decision, controlling in this Circuit, appears to adopt an extremely liberal standard of privity in § 12(2) situations, essentially requiring only some indicia of participation or solicitation on the part of an individual to warrant the imposition of liabilty.

Therefore, as a result of *Katz, Hill York,* and related decisions in this area, it would be nothing more than an exercise in semantic hair-splitting for this Court to attempt to delineate a legally cognizable distinction between those categories of persons who have previously been exposed to liability under § 12(2) and those persons charged with aiding and abetting and conspiring in the violation of § 12(2). No one of these formulations is a "magic word"; in effect, each of them indicates participation to one degree or another.[11] Determination of the extent of this participation and whether or not it is sufficient to impose liability upon the secondary defendants must obviously await discovery. And concededly, the initial burden of proving this requisite participation would rest

---

11. A common definition of aiding and abetting in the criminal context is the following:

"Whoever aids, abets, counsels, commands, induces or procures the commission of a crime is punishable as a principal. In order to aid or abet the commission of a crime a person must associate himself with the criminal venture, participate in it, and try to make it succeed." Manual on Jury Instructions in Federal Criminal Cases, 33 F.R.D. 523, 544 (1963).

In Pinkerton v. United States, 328 U.S. 640, 649, 66 S.Ct. 1180, 1185, 90 L.Ed. 1489 (1946) (dissenting opinion), Justice

Rutledge distinguished conspiracy from aiding and abetting:

"The gist of conspiracy is the agreement; that of aiding, abetting or counseling is in consciously advising or assisting another to commit particular offenses, and thus becoming a party to them; . . ."

*See* Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673, 678, 680 (N.D.Ind.1966), 286 F.Supp. 702, 708 (N.D.Ind.1968), aff'd, 417 F.2d 147 (7th Cir. 1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970). *See also* Restatement of Torts § 876 (1939).

with the plaintiff. *See* III Loss, *supra,* at 1716.[12]

■ Our decision on this point has also been influenced by the general statutory scheme of the federal securities laws and those decisions dealing with situations comparable to the instant case in the criminal area. Prof. Loss has outlined this scheme with precision:

"It [the 1933 Act] deals only with disclosure and fraud *in the sale of securities.* It has but two important substantive provisions, §§ 5 and 17(a). Non-compliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all makes a rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 . . . are all embracing." III Loss, *supra,* at 1785.

Recognizing the logic that persons who are criminally responsible for violations of §§ 5 and 17(a) should similarly be subject to civil liability under §§ 11 and 12, it becomes instructive to examine cases in the criminal context.

For example, in SEC v. National Bankers Life Insurance Co., 324 F.Supp. 189 (N.D.Tex.1971), the Court stated that aiding and abetting or conspiracy are viable counts under §§ 5 and 17(a) of the 1933 Act and Rule 10b–5. After establishing to its satisfaction that individual independent violations were present, the Court concluded that aiding and abetting liability was similarly present as "[c]ertain acts by persons other than issuers or underwriters are so intertwined with the acts by those persons that they are liable on the basis of aiding and abetting in the violation of Section 5 of the Securities Act of 1933." *Id.* at 194. The Court went on to state:

"Under this theory a defendant could be held liable, if he was involved in the acquisition of the shares to be sold. Nees v. Securities & Exchange Commission, 414 F.2d 211, 220 (9th Cir. 1969). Further a defendant could be held liable merely for taking 'steps necessary to the distribution.' Securities & Exchange Commission v. North American R & D Corp., [424 F.2d 63, 81, 2d Cir. 1970]. No intent is required to violate Section 5 as an aider and abettor and the only knowledge requirement is that a defendant 'had reason to know or should have known that the securities should have been registered.' Nees v. Securities & Exchange Commission, supra, 414 F. 2d at 220–221." *Id.*

The Court implied a similar conclusion in its discussion of aiding and abetting liability under § 17(a). *Id.* at 195. And in discussing conspiracy under § 5 of the 1933 Act, the Court concluded that the absence of the words "scheme" or "conspiracy" does not bar such allegations:

"The knowledge requirement for liability under such a scheme is more than that required to hold someone as an aider and abettor to a single sale of unregistered stock or a single fraudulent act and probably something comparable to that required to hold a person liable as an aider and abettor to a scheme to defraud—general awareness of overall improper conduct and that the act performed in some way contributes to that conduct." *Id.*

*See also* SEC v. North American R & D Corp., 424 F.2d 63 (2d Cir. 1970); SEC v. Midland Basic, Inc., 283 F.Supp. 609 (D.S.C.1972); *cf.* SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972); Feit v. Leasco Data Processing Equipment Corp., 332 F.Supp. 544 (E. D.N.Y.1971).

Defendants cite a number of decisions in support of their motion, but we do not consider any of these opinions to be controlling in the instant case. Dorf-

12. As this decision results from a motion to dismiss, we see no reason to elaborate at this time upon the relative burdens of the parties in establishing their claims in this area.

man v. First Boston Corporation, 336 F.Supp. 1089 (E.D.Pa.1972); Lynn v. Caraway, 252 F.Supp. 858 (W.D.La. 1966); Barlas v. Bear, Stearns & Co., 64–66 CCH Fed.Sec.L.Rep. ¶ 91,674 at 95,476 (N.D.Ill.1966); First Trust & Savings Bank of Zanesville, Ohio v. Fidelity-Philadelphia Trust Co., 112 F. Supp. 761 (E.D.Pa.1953).

In First Trust & Savings Bank of Zanesville, Ohio v. Fidelity-Philadelphia Trust Co., *supra,* there was no indication that the defendant actively participated in any aspects of the sale. The Court characterizes Fidelity's activities as "custodial" and noted that the bank "acted in its normal capacity as a bank in effecting collection of drafts . . . ." Judge Clary, in his opinion, goes on to state:

"At most, Fidelity acted as a conduit for the transmission of papers and as a stakeholder of warehouse certificates. . . [I] am of the opinion that even under the most liberal construction of that term, *Fidelity did not become a seller or participate in the sale of securities* by acting as a stakeholder of the collateral and as a forwarding bank for collection of drafts." *Id.* at 770. (emphasis added)

In Lynn v. Caraway, *supra,* the Court refused to impose § 12(2) liability upon a banker, Caraway, whom the prospective purchasers of the securities contacted in order to determine the reliability and trustworthiness of the seller. Apparently, the information which they received from Caraway was favorable and the purchasers, therefore, contended that, as Caraway allegedly knew of the seller's financial difficulties, his failure to relate this information to them brought him within the purview of § 12(2).

The Court determined that Caraway had not made any statement or omission prohibited by the statute and that, at the time of the conversation, he could not have had any interest in the sale of securities. To the contrary, in light of the pleadings we cannot now make such findings in connection with the Caesars Palace defendants, nor can we indulge in presumptions of nonparticipation which served as the basis of the decision in *Caraway.*

We respectfully decline to follow the decision of the District Court in Dorfman v. First Boston Corp., *supra,* where a requirement of strict privity was established under § 12(2). In the first place, as stated above, it is our understanding that the privity concept under § 12(2) is no longer limited to control or direct purchase-sale situations, as is stated in *Dorfman.* Secondly, given the factual basis of the instant matter and, in particular, our conclusion that an allegation of conspiracy is sufficient to bring this controversy within the purview of § 12(2), we do not believe that dismissal would be appropriate at this stage of the proceedings.

Similarly, defendant's reliance on Barlas v. Bear, Stearns & Co., *supra,* is not persuasive. The Court in *Barlas* refused to find allegations of aiding and abetting or conspiracy sufficient to state a cause of action under § 12(2). We expressly disagree with this holding for the reasons stated above. Furthermore, *Barlas,* as does *Dorfman,* posits a strict privity requirement which is neither the law of this Circuit nor the prevailing standard to be applied in the securities area. *See* Hill York Corp. v. American International Franchises, Inc., *supra;* Katz v. Amos Treat & Co., *supra.*

The fundamental purpose of the federal securities laws, to quote the language of Mr. Justice Goldberg in SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963), is "to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry." To this end, the courts have continually recognized the broad, remedial nature of the 1933 Act and the need to adopt a liberal interpretation of the statute in order to

best effectuate the congressional purpose. *E. g.*, Creswell-Keith, Inc. v. Willingham, 264 F.2d 76 (8th Cir. 1959); Newman v. Weinstein, 229 F.Supp. 440 (N.D.Ill.1964); SEC v. Payne, 35 F. Supp. 873 (S.D.N.Y.1940). Our interpretation of § 12(2) is, we believe, wholly consistent with these ends. Persons participating directly in a violation of the statute will not escape liability under the express language of the Act; similarly, those persons who are aware of and, to some lesser degree, participate in a violation of the securities laws and either enter into an agreement with or give assistance to the primary wrongdoers should not be permitted to escape the imposition of liability. As one commentator has pointed out, "[s]uch individuals will be subject to liability because they have acted knowingly or recklessly" to assist in such conduct or to be a part of a proscribed course of action.[13]

Unequivocal statements to the effect that allegations of aiding and abetting or conspiracy are not actionable under §

12(2) are not uncommon, *see, e. g.*, Barlas v. Bear, Stearns & Co., *supra*, at 95,478; Zachman v. Erwin, 186 F.Supp. 681, 686 (S.D.Tex.1959), but the logic of such conclusions is neither very clear nor convincing and has not gone uncontradicted. *See, e. g.*, Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673 (N.D.Ind.1966); H.L. Greene Co. v. Childree, 185 F.Supp. 95 (S.D.N.Y.1960); SEC v. National Bankers Life Insurance Co., *supra*.

We are thereby constrained to find that the allegations against the movants made in the *Channing* complaint are sufficient to state a claim for relief under § 12(2) of the 1933 Act and to deny the Caesars Palace defendants' motion to dismiss.

## IV

■ Caesars Palace defendants urge this Court to dismiss the second cause of action as insufficient to state a claim against them under § 11 of the 1933 Act, 15 U.S.C. § 77k.[14] The sole charges

---

13. Ruder, Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In *Pari Delicto*, Indemnification, and Contribution, 120 U.Pa.L.Rev. 597, 646 (April, 1972).

14. Section 11 states, in part:
 (a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent juridiction, sue—
 (1) every person who signed the registration statements;
 (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
 (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him; (5) every underwriter with respect to such security.
 If such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, then the right of recovery under this subsection shall be conditioned on proof that such person acquired the security relying upon such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omission, but such reliance may be established without proof of the reading of the registration statement by such person.

made against the movants under § 11 is that they aided and abetted or conspired in the violation of this section.[15]

Although § 11 has not been litigated to any appreciable extent, and as a result, there is a scarcity of authority on this point, we are constrained to find that such allegations as are present in the instant complaint state a cause of action under this chapter of the Act. *Cf.* SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972); United States v. Anzelmo, 319 F.Supp. 1106, 1119 (E.D.La.1970).

We should add that, given the factual context of this case, a substantial amount of our discussion on § 12(2) in the preceding portion of this opinion is applicable to a § 11 situation and, in particular, to § 11(a)(2).

Therefore, the motion of the moving defendants to dismiss the second cause of action is hereby denied.

V

Finally, movants urge dismissal of the fourth cause of action due to the failure of the complaint to allege the requisite elements of scienter and to allege that fraud, misrepresentations or omissions were made by them "in the offer or sale of any securities" as required by § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).[16]

Further discussion of the "scienter" requirement is unnecessary given our previous conclusion that the allegations of scienter in the complaint are sufficient to state a claim for relief under §

10(b) and Rule 10b–5 and our recognition that such language equally satisfies the requirement of § 17(a).[17] *See* Weber v. C.M.P. Corp., *supra,* 242 F.Supp. at 325. *See also* Johns Hopkins University v. Hutton, *supra.*

In connection with defendants' second objection to the § 17(a) count, it should be noted that ¶ 61 of the complaint alleges that the moving defendants "conspired with and aided and abetted defendants Caesars World, Inc. in violating § 17(a)" of the 1933 Act.

 The substantial similarity between § 17(a) and § 10(b) of the 1934 Act is apparent, and we have no doubt that charges of conspiracy and aiding and abetting sufficient to impose liability under § 10(b) and Rule 10b–5, Brennan v. Midwestern Life Insurance Co., *supra,* 259 F.Supp. at 676–681; Kardon v. National Gypsum Co., 69 F.Supp. 512, 514–15 (E.D.Pa.1946); *see* H.L. Green Co., Inc. v. Childree, *supra;* III Loss, *supra,* at 1770; VI Loss, *supra,* at 3672, are also sufficient to impose liability under § 17(a). In Thiele v. Shields, 131 F.Supp. 416, 420 (S.D.N.Y.1955), the Court found that an allegation that "the defendants were engaged 'in a common plan or concert of action' " in the sale of bonds was sufficient to connect the defendants with the sale and to impose liability under both § 17(a) and § 10(b), citing Kardon v. National Gypsum Co., *supra.* In Greenwich Savings Bank v. Shields, 131 F.Supp. 368, 369 (S.D.N.Y. 1955), the complaint charged the defendants with "having acted in concert with

15. See the complaint in *Channing,* ¶ 51.

16. Section 17(a) states:
 (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
 (1) to employ any device, scheme, or artifice to defraud, or
 (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make

the statements made, in the light of the circumstances under which they were made, not misleading, or
 (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

17. The original allegations of scienter, i. e., that the defendants "intentionally, willfully, and knowingly" carried out prohibited activities, found in ¶ 36 of the *Channing* complaint are realleged in ¶ 59 and are, thereby, made applicable to the fourth cause of action premised upon § 17(a).

[those defendants charged with making the sale of securities] to defraud plaintiff" in violation of § 17(a) and § 10(b). The Court expressly held that such an allegation adequately stated a claim under both sections of the securities laws. And in Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135, 144 (7th Cir.), cert. denied, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed. 2d 88 (1969), allegations of aiding and abetting were found to be sufficient to state a cause of action under both § 17(a) and Rule 10b–5.

For these reasons we hold that charges of conspiracy and aiding and abetting do state a cause of action under § 17(a) of the Securities Act and that the motion of the moving defendants to dismiss plaintiff's fourth cause of action must be denied.

MOTIONS TO DISMISS AND TO STRIKE: BROOKS, FENICHAL, GREGORIO, KRAUT AND COPE

The Caesars Palace defendants have filed numerous motions in these cases, including motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a motion to strike pursuant to Fed.R.Civ.P. 12(f), and a motion to dismiss for failure to join indispensable parties pursuant to Fed.R.Civ.P. 12(b)(7).

At this time, a fuller recitation of the factual background out of which these matters arose, as set out in the relevant complaints in this litigation and upon which the original SEC complaint is based, is appropriate.

On April 25, 1969, the principal shareholders of Caesars Palace agreed with Lum's, Inc., now known as Caesars World, to sell Caesars Palace for $60,000,000 in cash, the purchase price being based on a multiple of 10 times the pretax earnings of Caesars Palace for the fiscal year ending April 30, 1969. This original purchase agreement called for $30,000,000 in cash to be paid at the September 30, 1969 closing and $30,000,000 in January 1970. This agreement was negotiated by defendants C. Perlman and Chasen for Lum's and by defendants N. Jacobson, Sarno and Zarowitz for the sellers. The original purchase agreement was modified twice. On June 24, 1969, Lum's was allowed to make its cash payments over an extended period of time and on September 8, 1970, Lum's was allowed to issue 1,000,000 shares of Lum's common stock to the sellers in lieu of $12,000,000 of the remaining debt.

On September 30, 1969, Lum's acquired Caesars Palace, paying $30,000,-000 in cash to the sellers. Eight million dollars of this initial payment was raised through an offering of common stock to the public pursuant to a registration statement which became effective on September 24, 1969. Twenty-two million dollars of this purchase price was raised through the sale of convertible debentures to institutional investors pursuant to a prospectus which became effective on September 30, 1969. (The 1,000,000 shares of stock which was to be issued to the sellers in exchange for the $12,000,000 in indebtedness was accomplished by a registration statement which became effective on January 12, 1971.)

Although, pursuant to the purchase agreement, Lum's had a right of access to the records of Caesars Palace from April to September of 1969, the sellers allegedly continued to operate and control Caesars Palace during this time. An unaudited statement of income for this period showed a pre-tax loss of $932,266, compared to profits in excess of $2,000,000 in comparable periods before and after, and a decrease in working capital of $4,500,000. In December of 1970, federal officials confiscated $1,500,000 from locked boxes maintained on the premises by Zarowitz, the former casino director, and by two other casino executives. In January of 1971, the SEC initiated and examined the acquisition of Caesars Palace and all events relating thereto.

The respective motions which have been filed in each of the cases under discussion will be discussed in turn.

## BROOKS

Moving-defendants in *Brooks* contest their liability under § 17 of the 1933 Act, under § 10(b), 13, 14(a), and 18 of the 1934 Act, and under Rule 10b–5. Motions to dismiss each of these claims has been filed as well as a motion to strike in the alternative.

### I

 Defendants have raised numerous minor objections to the claims asserted by the plaintiffs under § 18 of the 1934 Act, 15 U.S.C. § 78r.[18] None of these objections merit extended discussion. We conclude that the complaint adequately and correctly alleges liability under § 18 and that the motion to dismiss must be denied.[19]

 In essence, each of the defendants' objections is premised upon a theory similar to the one advanced by them in connection with §§ 12(2) and 11 of the 1933 Act, i. e., that secondary liability for aiding and abetting and conspiracy is not actionable under § 18. There is no need to reiterate the substance of our earlier discussion except to state that, in our opinion, the language and intent of § 18 in particular, and the federal securities laws as a whole, permit the imposition of liability upon aiders and abettors and conspirators. As such, the instant complaint is sufficient to state a claim for relief under the statute and to withstand a motion to dismiss.

### II

Defendants contend that the *Brooks* complaint fails to state a cause of action under § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and under Rule 10b–5 promulgated pursuant thereto.[20]

18. Section 18 states, in part:

"(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78*o* of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant."

19. One contention of the movants deserves specific comment. Defendants strongly argue, both in their original and supplemental memoranda of law, that § 18 requires allegations of reliance upon material *misstatements* made in a document filed with the SEC and that allegations which are premised solely upon *omissions* of material facts do not state a cause of action under the statute. No authority is cited in support of this statement. But even a cursory reading of § 18 indicates that liability results if statements made are "false and misleading with respect to any material fact." Clearly, the failure of a person to include material information in a necessary document can just as surely result in a false and misleading statement as would the inclusion of incorrect information. *See* Gann v. BernzOmatic Corp., 262 F.Supp. 301, 304 (S.D.N.Y. 1966).

20. Section 10(b) states:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

■ First, movants argue that there was no duty imposed upon them as principal sellers to communicate information to the plaintiffs. However, as we stated in our earlier discussion of privity in *Channing, supra,* the absence of privity does not amount to a fatal defect of proof in a § 10 (b) or Rule 10b–5 situation. This conclusion is equally applicable to the *Brooks* matter and we conclude that, given the present state of this litigation, an actionable relationship exists between the parties.

It should further be noted that, under § 10(b) and Rule 10b–5, the liability of aiders and abettors and conspirators has been established to this Court's satisfaction. Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673 (N. D.Ind.1966), aff'd, 417 F.2d 147 (7th Cir. 1969); *see* Ruder, Multiple Defendants in Securities Law Fraud Cases, *supra,* 120 U.Pa.L.Rev. at 620 et seq., thereby limiting the actual significance of privity in these types of cases.

■ Second, Caesars Palace defendants complain that the various affirmative misrepresentations charged against them by defendants are stated entirely in conclusory language which is not sufficient to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure which states, in part:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Movants rely on Reiver v. Photo Motion Corp., 325 F.Supp. 214 (E.D.Pa.1971), in which the Court granted a motion for a more definite statement in a § 10(b)

suit. But the allegations of fraud in *Reiver,* as well as in those other cases in which courts have held such complaints to be insufficient in light of Rule 9(b), *see, e. g.,* O'Connor v. GCA Corp., 332 F.Supp. 1246 (S.D.N.Y.1971), have been mere paraphrases of the language of the relevant statutes. The complaint in *Brooks,* on the other hand, does sufficiently apprise defendants of the basic transactions upon which the claim of fraud is based.

We are in agreement with the rationale enunciated by the Court in Contract Buyers League v. F & F Investment, 300 F.Supp. 210, 226 (N.D.Ill.1969):

"This . . . does not mean that a complaint properly alleging fraud in a class action must specify the particular details of every transaction and occurrence that comprises the allegedly unlawful activity. Such a requirement would undermine the utility of the class action device, particularly in a case of this magnitude, involving a multitude of similar individual relationships. The burden of pleading would eliminate the device in the very cases where it might be most appropriate and most useful."

The Court went on to require that a class action complaint "state generally facts establishing each and every element essential to a cause of action for fraud."

■ Under the *Contract Buyers'* guidelines, the *Brooks* complaint read as a whole, and paragraph 20 in particular, properly states a claim for relief. This Court is aware of the difficulties which a plaintiff encounters in initiating an

---

Rule 10b–5, 17 C.F.R. 240.10b–5, provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

action of this type, given the basically undeveloped state of the facts at this early stage of the proceeding. A strict application of Rule 9(b) in class action securities fraud cases could result in substantial unfairness to persons who are the victims of fraudulent conduct. We are not of the opinion that such measures must or should be taken, particularly in light of the liberal discovery procedures which are instantly available to all parties. Therefore, defendants' motion will be denied.

 Finally, movants argue that the *Brooks* complaint fails to allege the requisite element of scienter. As we indicated in our earlier discussion of this problem in *Channing*, the necessity to plead and prove scienter in an action based on § 10(b) and Rule 10b–5 is a question which has not yet been conclusively decided by the courts. Compare Fischman v. Raytheon Mfg. Co., 188 F. 2d 783, 786–788 (2d Cir. 1951) with Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961). *See* SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 855 (2d Cir. 1968), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). However, plaintiffs' allegation in the complaint that the defendants "aided and abetted each other" [21] in the violation of § 10(b) is, in our opinion, sufficient to satisfy the scienter requirement. *See* Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135, 144 (7th Cir. 1969). This Court is unaware of any definition of "aiding and abetting" which does not encompass the element of knowledge. *See* Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 93 L.Ed. 919 (1949) (consciously sharing in any criminal act); People v. Dole, 122 Cal. 486, 492, 55 P. 581, 584 (1898) ("'abet' includes knowledge of the wrongful pur-

pose"); Black's Law Dictionary 91 (1951). Therefore, we can only conclude that such language meets even the most traditional requirements of § 10(b).

### III

Movant-defendants' motions to dismiss claims for relief premised upon § 13 of the 1934 Act, 15 U.S.C. § 78m, and § 17 of the 1933 Act, 15 U.S.C. § 77q, raise issues similar to those which we have discussed in earlier portions of this opinion and do not merit further elaboration. It is our conclusion that the *Brooks* complaint does state a proper cause of action under both sections.

### IV

Finally, in connection with the *Brooks* complaint, the objection of the principal-seller defendants to plaintiff's claims premised upon § 14(a) of the 1934 Act, 15 U.S.C. § 78n(a),[22] are found to be without merit.

Section 14(a) imposes liability upon persons who improperly "solicit" any proxy, consent, or authorization. A reading of the statute and the case law interpreting its language would, at first blush, appear to indicate that liability for violations of § 14(a) could not be imposed upon persons in the position of the defendants as, to paraphrase the movants' brief, the only proxy statements which are here involved were those issued by Caesars World and not by the principal-sellers. Caesars Palace defendants would have us hold, as a result, that allegations solely of "aiding and abetting" are insufficient to state a cause of action against them under this statute. And it is true that those courts that have encountered this issue in the

---

21. See Complaint in *Brooks*, ¶ 18, 19, and 20.

22. Section 14(a) states:
"It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title."

past have so held. *See* Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963, 970 (2d Cir. 1969); Robbins v. Banner Industries, Inc., 285 F.Supp. 758, 761 (S.D.N.Y.1966). However, it is suggested that the reasoning put forth by the defendants is too facile given the expanding nature of the federal securities laws and the policies which they have been developed to serve.

In the instant case, we are not confronted simply with charges of isolated violations of one aspect of the securities acts. Instead, plaintiffs charge a complex scheme which resulted in the transfer or sale of immense amounts of cash and stocks as well as the transfer of ownership of a multimillion-dollar corporation. As is indicated from a reading of the complaint of the Commission and of any of the other complaints before us in this litigation, including *Brooks*, the alleged activities of the defendants brought them in contact with nearly every significant section of the federal securities laws. If the purpose of the Securities Act of 1933 and the Securities Exchange Act of 1934 is to be accomplished, persons who participate in fraudulent practices covered by these Acts must be held accountable for their actions.

There is no need for us to reiterate our understanding of secondary liability under the securities laws. It is sufficient to note specifically that, if the defendants are shown to have been involved in the activities which are charged in the complaint, even if they have not actually solicited the proxies but merely participated in their preparation or in other related ways brought about such solicitation, they must share the responsibility with those persons who are primarily vulnerable under this section.

We would distinguish the instant case from *Iroquois* and *Robbins*, as our analysis of these cases does not reveal a pattern of conduct on the part of the defendants involving so wide a variety of activities as are here alleged to have taken place. For these reasons, we do believe that the totality of circumstances presently before us, as well as both the language and intent of § 14(a) and of the securities acts as a whole, justify our denial of the defendants' motion to dismiss.

With regard to the movants' other stated objections to the plaintiffs' § 14(a) cause of action, we do not believe extended discussion is necessary at this time. The significance of the alleged misstatements or omissions in the proxy statement and their effect upon the exercise of corporate suffrage must await further discovery and trial in this matter. *See* Mills v. Electric Auto-Lite Co., 396 U.S. 375, 381, 90 S.Ct. 616, 24 L. Ed.2d 593 (1970), citing J. I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). In addition, although no specific allegations of corporate action taken in connection with the proxy statement at issue are found in the *Brooks* complaint, a reading of that complaint as a whole indicates that the alleged proxy violations were one of many factors which purportedly resulted in illegal corporate action. As such, the complaint is sufficient in this respect to place the parties on notice as to the general transactions which were allegedly effected by the alleged proxy violations and to state a claim for relief under § 14(a).

V

We have carefully considered the movants' motion to strike pursuant to Fed. R.Civ.P. 12(f) and are constrained to deny it in light of the previous portions of our opinion. In addition, it is urged that we authorize dismissal of this matter on the basis of the lack of specificity and clarity in the complaint. However, after a reading of the complaint, we conclude that the substantive charges made by the plaintiffs are of sufficient clarity to permit the defendants both to adequately answer the complaint and to intelligently prepare for discovery, all of which is consistent with the guidelines established by the Federal Rules. *See*

Fed.R.Civ.P. 8–10; C. Wright, Federal Courts § 68 (1963).

## FENICHAL

The Caesars Palace defendants ask this Court to dismiss the first count of plaintiff's complaint, premised upon § 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder, for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, movants request that the complaint be amended to clarify allegedly ambiguous and inconsistent allegations.

The basis of movants' motion is as follows: (1) that plaintiff claims that the alleged violation of § 10(b) resulted from misstatements or omissions in a 1971 registration statement filed by Caesars World which never became effective and as a result of which no stock was ever issued; (2) that plaintiff claims that § 10(b) violations occurred in the sale of securities by the shareholders of Caesars Palace to Caesars World as a part of the overall purchase agreement; and (3) that plaintiff claims that violations of § 10(b) occurred in the sale of securities by Caesars World to the public pursuant to the 1969 registration statement.

Defendants argue that, as plaintiff purchased his stock in Caesars World in the summer of 1969,[23] he cannot allege reliance on misrepresentations or omissions in any registration statements filed after his purchase. Similarly, it is contended that, as plaintiff was not a purchaser of securities issued by Caesars Palace to Caesars World, he cannot rely on any misrepresentations alleged to have occurred in that sale in light of the purchaser-seller requirement established in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952).

Plaintiff, in his memorandum in opposition, has completely and inexplicably failed to address himself to any of the defendants' arguments and our own reading of the Fenichal complaint has not clarified the grounds upon which such relief is being sought.

We hesitate, given the factual circumstances of this litigation, to foreclose the plaintiff, at this early stage of the proceedings, from pressing his claim for relief. However, as we are unable to determine the basis of his § 10(b) claims, the motion of the Caesars Palace defendants for a more definite statement will be granted and plaintiff is hereby directed to file an amended complaint forthwith.

## COPE

Principal-seller defendants in Cope request dismissal of the charges made against them, which allege violations of §§ 10(b), 13, and 14(a) of the 1934 Act and Rule 10b–5 promulgated by the Commission, for failure to state a claim for relief pursuant to Fed.R.Civ.P. 12(b)(6). This Court is also asked to grant defendants' motion to strike pursuant to Fed.R.Civ.P. 12(f).

A number of movants' objections to the § 10(b) and Rule 10b–5 allegations in Cope, as well as to the §§ 13 and 14(a) allegations and their motion to strike, are precisely the same objections which were advanced and found to be without merit in Brooks. Therefore, there is no necessity for us to further consider or elaborate upon these objections and the respective motions to dismiss or strike will be denied.

However, movant also advances the same objections to the Cope § 10(b) and Rule 10b–5 count as were advanced in Fenichal, and they are not without merit. Therefore, as in Fenichal plaintiff is hereby directed to file an amended complaint forthwith so that the basis of his § 10(b) claim may be determined.

## KRAUT

Both Kraut and Gregorio, the latter to be discussed separately, are derivative actions brought on behalf of and for the

---

23. See complaint in Fenichal, ¶ 2.

benefit of Lum's, Inc. Essentially both complaints allege that fraudulent activities took place in connection with the sale of Caesars Palace to Lum's, similar to the allegations made in *Brooks* and *Fenichal.*

In *Kraut,* the principal-seller defendants have moved this Court to dismiss both the first and second causes of action for failure to state a claim under either §§ 11 or 17 of the 1933 Act or §§ 10(b) or 14(a) of the 1934 Act and under Rule 10b–5.

I

Movants urge dismissal of plaintiff's claims under § 17 of the 1933 Act, 15 U.S.C. § 77q, § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 on the basis that plaintiff must demonstrate some reliance upon false and misleading information in their role as purchaser or seller and that such allegations are not present in the instant complaint. It is contended that, as the securities at issue were issued by Caesars World to the public and were not purchased by the corporation, the requisite element of reliance cannot be shown.

We cannot agree with the defendant's characterization of this suit. The complaint before us alleges the misappropriation of the assets of Caesars Palace by the named defendants. It alleges that defendants enriched themselves by means of fraudulent sales of Lum's securities through the use of misleading prospectuses and other writings [24] and by artificial inflation of the price of Lum's stock to the detriment of Lum's and its shareholders.[25] Such charges are surely sufficient to sustain a derivative claim for relief under the federal securities laws and plaintiff is clearly a proper party to assert a claim of this type.

Section 10(b) outlaws the use of "any manipulative or deceptive device or contrivance" in connection with the purchase or sale of any security. The Act protects corporations as well as individuals who were sellers of a security. Lum's was allegedly injured through the use of deceptive devices and manipulative practices which deprived it of full consideration and value in the transactions at issue. If these allegations are substantiated, Lum's may certainly invoke the protection of the securities laws. Rule 10b–5 and § 10(b) were designed to prohibit *all* fraudulent schemes in connection with the purchase and sale of securities. A. T. Brod & Co. v. Perlow, 375 F.2d 393, 397 (2d Cir. 1967). As the Supreme Court recently stated in Superintendent of Insurance of New York v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), a case in many respects comparable to these derivative suits, § 10(b) "must be read flexibly, not technically and restrictively. Since there was a 'sale' of a security and since fraud was used 'in connection with' it, there is redress under § 10(b) . . . ." *Id.* at 12, 92 S.Ct. at 169. *See* Rekant v. Desser, 425 F.2d 872 (5th Cir. 1970); Condon v. Richardson, 411 F.2d 489 (7th Cir. 1969); Globus, Inc. v. Jaroff, 266 F.Supp. 524 (S.D.N.Y.1967). The alleged activities of the defendants undoubtedly come within the scope of §§ 10(b) and 17 and Rule 10b–5.

II

Movants ask this Court to dismiss *Kraut's* claim for relief under § 11 of the 1933 Act on the basis that only persons acquiring securities issued pursuant to a registration statement are given a civil remedy under this statute. *See* Barnes v. Osofsky, 373 F.2d 269 (2d Cir. 1967); Colonial Realty Corp. v. Brunswick Corp., 257 F.Supp. 875 (S.D. N.Y.1966). As the only issuance of securities which is apparently at issue in *Kraut* are securities issued by Lum's to the public, the derivative plaintiff, who

---

24. See the complaint in *Kraut,* ¶¶ 5, 8, 9, 12, 18.

25. See the complaint in *Kraut,* ¶¶ 7, 8, 10, 11, 12.

is suing on behalf of the issuer corporation, cannot sustain his § 11 claim.

As the plaintiff has not contested the movant's arguments in his brief in opposition, we can only conclude that he realizes the spuriousness of this claim. Therefore, we will grant the Caesars Palace defendant's *motion to dismiss the* § 11 claim without prejudice and plaintiff, if he so desires, is given leave to amend this portion of his complaint.

### III

With regard to the movants' contention that the cause of action based on § 14(a) of the 1934 Act, our discussion of § 14(a) in connection with the *Brooks* motion to dismiss, *supra,* is dispositive of the substantive issues presented in this motion.

Movant is correct in requesting us to require clarification of the complaint at §§ 18 and 19 and plaintiff is given leave to amend thereto.

 In addition, we agree that, as stated by movants, there is no single remedy for violation of the proxy rules and that courts are free to fashion equitable remedies in light of the circumstances of the particular proxy violations found to have been committed. *See* Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386, 90 S.Ct. 616, 24 L.Ed.2d 593 (1969). Therefore, movants' motion to strike the allegation that the said proxies are void and that "all actions taken at stockholders meetings at which such proxies were used are void and voidable as they may apply to the benefit of each defendant herein" [26] is granted.

### GREGORIO

The moving-defendants in *Gregorio* contest their liability under §§ 10(b) and 14(a) of the 1934 Act and under Rule 10b–5. Further, they contend that the plaintiff has not complied with the requirements for bringing a derivative action pursuant to Rule 23.1, Fed.R.Civ. P., and that the complaint improperly asks this Court to award punitive damages.

### I

Rule 23.1 of the Federal Rules of Civil Procedure reads, in part, as follows:

> "In a derivative action . . . The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or not making the effort . . . ."

Although movants do not, in their motion, dispute plaintiff's statement that demand upon the stockholders of Lum's would be futile and unreasonable,[27] they do argue that compliance with the requirements of Rule 23.1 as to particularity of pleading and to the necessity of demand upon the Board of Directors of Lum's are not satisfied by plaintiff's complaint. Paragraph 23 of the complaint states:

> "Plaintiff has made no demand upon the Board of Directors of Lum's to bring and prosecute this action. Such a demand would have been futile because the members of the Board of Directors were themselves participants in the fraudulent schemes as aforesaid and are themselves defendants in this action. Any demand upon the members of the Board of Directors to redress the wrongs herein complained of would in effect constitute a demand that they bring action against themselves and would have been futile. Moreover, any demand upon the Board of Directors to redress the wrongs herein complained of would have been futile, because the directors have known of the aforesaid wrongs since they were committed, and they have taken no steps to remedy them."

26. See complaint in *Kraut,* ¶ 19.

27. See the complaint in *Gregorio,* ¶ 24.

After carefully reviewing the relevant cases in this area, we conclude that the allegations made in the complaint are sufficient to meet the requirements of Rule 23.1. Essentially, the decision as to whether or not a derivative plaintiff may dispense with such a demand is within the sound discretion of the court. De Pinto v. Provident Security Life Insurance Co., 323 F.2d 826, 830 (9th Cir. 1963), cert. denied, 376 U.S. 950, 84 S.Ct. 965, 11 L. Ed.2d 969 (1964); Cohen v. Industrial Finance Corp., 44 F.Supp. 491 (S.D.N. Y.1942). And in those instances where courts have permitted derivative plaintiffs to dispense with such demands, allegations that demands would be "futile" since the present directors are involved as defendants in the action have been found sufficient to support such a ruling. Pioche Mines Consolidated, Inc. v. Dolman, 333 F.2d 257, 265 (9th Cir. 1964); Winkelman v. General Motors Corp., 44 F.Supp. 960, 1022 (S.D.N.Y. 1942); 3B J. Moore, Federal Practice, ¶ 23.2.19, at 23.1–254 (2d ed. 1969). The Second Circuit, in Cathedral Estates, Inc. v. Taft Realty Corp., 228 F.2d 85, 88 (2d Cir. 1955), noted that "where the directors and controlling shareholders are antagonistic, adversely interested, or involved in the transaction attacked, a demand on them is presumptively futile and need not be made." Accord, Kaminsky v. Abrams, 281 F. Supp. 501, 503 (S.D.N.Y.1968); Treves v. Servel, Inc., 244 F.Supp. 773, 777–778 (S.D.N.Y.1965).

Considering the present constitution of the Board of Directors of Lum's, Inc., and the fact that several of these persons were similarly involved in the circumstances which are the basis of the instant suit, it is our conclusion that the allegations of the complaint at issue are sufficient to meet the requirements of Rule 23.1 and that the motion of the defendants to dismiss be denied.

## II

Further discussion of movants' contention that plaintiff's allegations of violations of §§ 10(b) and 14(a) of the 1934 Act and of Rule 10b–5 should be dismissed is unnecessary in light of our disposition of these same issues in *Kraut*.

## III

Paragraph 21 of the *Gregorio* complaint requests the award of punitive damages against all defendants other than Lum's.[28] Defendants contend that such a prayer is improper, arguing that punitive damages are not recoverable under the 1934 Act. However, although this latter statement of the law is clearly correct, *see, e. g.*, Green v. Wolf Corp., 406 F.2d 291, 304 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Meisel v. North Jersey Trust Co. of Ridgewood, N. J., 216 F.Supp. 469 (S.D.N.Y.1963), the fact that the instant complaint also includes allegations of common law fraud[29] brings to our consideration an issue of some complexity.

We are confronted by a situation similar to the case of American Bank & Trust Co. v. Barad Shaff Securities Corp., 335 F.Supp. 1276, 1283 (S. D.N.Y.1972). The plaintiffs in the instant case and in *Barad* have argued that, under New York common law, punitive damages can be awarded in a fraud case "where the fraud, aimed at the public generally, is gross and involves high moral culpability." Walker v. Sheldon, 10 N.Y.2d 401, 405, 223 N. Y.S.2d 488, 491, 179 N.E.2d 497, 499 (1961). However, this statement of the law is complicated by the existence of § 28(a) of the 1934 Act, 15 U.S.C. § 78bb(a), which reads in part:

" . . . no person permitted to maintain a suit for damages under the provisions of [the 1934 Act] shall re-

---

28. Plaintiff's prayer for relief, paragraph E, limits the request for punitive damages in this manner.

29. See the complaint in *Gregorio*, ¶ 19.

cover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of."

As a result of § 28(a), the recovery of punitive damages has been barred under both § 10(b) of the 1934 Act, Green v. Wolf Corp., *supra*; and under § 17(a) of the 1933 Act, Globus v. Law Research Service, Inc., 418 F.2d 1276, 1286 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970).

■■■ The precise problem which we must decide has been clearly enunciated, although not resolved, by the *Barad* court:

"It is a difficult question whether the reasoning of *Globus* [*supra*] logically leads to a prohibition of punitive damages in this situation or whether § 28(a), as a statute in derogation of the common law, should be narrowly construed; or even whether the state rule of damages should, in any event, be applied in this case where the jurisdiction is pendent to an alleged federal securities violation." American Bank & Trust Co. v. Barad Shaff Securities Corp., *supra*, 335 F.Supp. at 1283.

Only a few district courts have directly confronted this question. The Court in Schaefer v. First National Bank of Lincolnwood, 326 F.Supp. 1186, 1193 (N.D. Ill.1970), expressly held that "punitive damages may not be recovered under common law doctrines for conduct actionable under the Securities Acts counts." To the contrary, the decision of the Court in Gann v. BernzOmatic, 262 F.Supp. 301 (S.D.N.Y.1966), stated that plaintiffs' establishment of their claim under state law for fraud and deceit would entitle them to punitive damages under New York law, citing Walker v. Sheldon, *supra*.

This Court is of the opinion that the law of this Circuit, as stated in *Gann*, is controlling. Our decision is buttressed by a recent holding of the Tenth Circuit Court of Appeals in Young v. Taylor,

466 F.2d 1329, 1337 (10th Cir. 1972), in which the Court ruled that § 28(a) was not intended to bar the recovery of exemplary damages in connection with claims based on common law fraud principles. *Cf.* III Loss, *supra*, at 1624. The Court in *Young* interpreted § 28(a) in the following manner:

". . . if a federal claim is maintained as here, recovery of actual damages twice on separate claims in the action is prohibited, but that if elements of a state claim are necessarily found to exist, punitive damages and attorney's fees allowed under state law are not barred." Young v. Taylor, *supra*, 466 F.2d at 1338.

As this Court is in agreement with the reading of § 28(a) as enunciated in *Young* and *Gann*, we will deny the movant's motion to strike the plaintiff's prayer for punitive damages.

## MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES

■■■ The Caesars Palace defendants have moved this Court to dismiss the complaints in *Brooks, Fenichal, Kraut,* and *Gregorio* for failure to join indispensable parties pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure. Such an issue may properly be raised by a motion to dismiss. Franz v. East Columbia Basin Irrigation District, 383 F.2d 391, 392 (9th Cir. 1967); 3A J. Moore, Federal Practice ¶ 19.05 [2], at 2211 (2d ed. 1970).

■■■ The motion to dismiss is supported by the argument that each of the complaints, in some manner, seeks recision of the underlying agreement of sale which resulted in the acquisition of Caesars Palace by Lum's. In order for the requested relief to be rendered, it is contended, all parties to that contract must be present. Such relief could not be so afforded in this case, if we accept the arguments of the defendants, as certain parties to that contract, namely the non-voting shareholders of Caesars Palace who received benefits pursuant to

the agreement, have not been joined as parties defendant.

We have no reason, at this time, to explore the numerous arguments advanced by the plaintiffs in opposition to this motion or to examine in detail the relevant law in the area.

As is pointed out by the plaintiffs in their brief in opposition, there is nothing in the motion or supporting affidavit which factually substantiates the movants' position that there are any indispensable parties not joined in this action.[30] The only support for this position are the conclusory allegations of the defendants, made in their briefs, that non-voting stockholders who are not parties to this action were intimately involved in the underlying transaction and are "indispensable" to the disposition of the case.

Such *ex parte* statements, made without any documentation, are insufficient to sustain the instant motion. *See* Estes v. Shell Oil Co., 234 F.2d 847, 852 (5th Cir. 1956); *cf.* United States v. Beard, 381 F.2d 329, 331 (6th Cir. 1967). Defendants' motion must be premised upon credible evidence which supports their claim that such parties exist and identifies those persons who are claimed to be indispensable. Absent such evidence, this Court would be forced to make its decision *in vacuo*.

▮ Numerous factors effect the ultimate disposition of the particular type of motion presently before us. *See* 3A J. Moore, *supra*, ¶19.01 [5.–4], at 2112 et seq. In particular, we must decide (1) whether or not the absentee would be adversely affected, what type of prejudice he would sustain as a result of a judgment in the action and what the effects of judgment would be upon the parties already joined, A. L. Smith Iron Co. v. Dickson, 141 F.2d 3 (2d Cir. 1944); Caldwell Mfg. Co. v. Unique Balance Co., 18 F.R.D. 258 (S.D.N.Y.1955); (2) whether the court could fashion a form of relief which would not require the presence of the allegedly "indispensable" parties, Ward v. Deavers, 92 U.S. App.D.C. 167, 203 F.2d 72 (1953); Miller & Lux, Inc. v. Nickel, 141 F.Supp. 41 (N.D.Calif.1956), but would provide the necessary relief to the joined parties, *cf.* Kroese v. General Steel Castings Corps., 179 F.2d 760 (3d Cir. 1949), cert. denied, 339 U.S. 983, 70 S.Ct. 1026, 94 L. Ed. 1386 (1950); and (3) what the practical effects of dismissal would be upon all parties involved, *see* Fitzgerald v. Haynes, 241 F.2d 417, 420 (3d Cir. 1957). None of these factors could possibly be considered given the barrenness of the instant record.

Accordingly, we decline to reach a decision upon the principal-sellers motion to dismiss for failure to join indispensable parties.

## MOTIONS FOR CLASS ACTION DETERMINATIONS IN BROOKS, FENICHAL, SILVER, AND MARGOLES v. POWELL

The concluding section of our opinion will deal with the motions of the plaintiffs in *Brooks, Fenichal, Silver,* and Margoles v. Powell for a determination that these cases may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

▮ Initially, we are mindful that the Court of Appeals for this Circuit, as well as numerous other federal appellate courts throughout the country, have acknowledged the fact that cases involving alleged violations of the federal securities laws are particularly suited for the employment of the class action device. In effect, these courts have declared time and again that Rule 23 is to be liberally construed with a view towards enhancing the use of class actions as a means of vindicating the rights of absent members who are unable, for whatever the reason, personally to prosecute their claims.[31] Kahan v. Rosenstiel,

---

30. See Memorandum of the Derivative Plaintiffs in Opposition, at 18–19.

31. The fact that the Securities and Exchange Commission is also active in this litigation does not eliminate the need or

424 F.2d 161 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Green v. Wolf Corp., 406 F.2d 291, 299 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968); Hohmann v. Packard Instruments Co., 399 F.2d 711 (7th Cir. 1968); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); Escott v. Barchris Construction Corp., 340 F.2d 731, 733 (2d Cir.), cert. denied sub nom., Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965); see Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969); Gerstle v. Gamble-Skogmo, Inc., 298 F.Supp. 66 (E.D.N.Y.1969); Dolgow v. Anderson, 43 F.R.D. 472 (S.D.N.Y.1968); III Loss, *supra*, at 1819; Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966).

Rule 23(a) prescribes four "pre-requisites to a class action," namely:

"[that] (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition, persons wishing to maintain a class action must meet the requirements of Rule 23(b), which reads, in relevant part, as follows:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

. . . . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs in the instant case urge affirmance of their motions on numerous grounds, stressing, in particular, the superiority of the class action device over "other available methods for the fair and efficient adjudication of this controversy." Fed.R.Civ.P. 23(b)(3). The defendants have asserted a number of reasons why these suits should not be permitted to go forward under Rule 23, and each of these contentions will be discussed in turn.

---

mitigate the usefulness of such class action procedures, as these various forms of action are cumulative and not alternative. Both the Securities Act of 1933 and the Securities Exchange Act of 1934 expressly provide for civil remedies, *see*, *e. g.*, 15 U.S.C. §§ 77k, 77*l*, 78i(e), 78r, and even when such a private right of action is not expressly granted, the courts have implied one in order to make effective the remedial purpose of federal securities litigation. *See* J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Kardon v. National Gypsum Co., 73 F.Supp. 798 (E.D.Pa. 1947).

## BROOKS, FENICHAL, AND MAR-GOLES

After careful examination of the various documents and briefs which have been brought to our attention in connection with these class action motions, we conclude that there is no reason to deny class status to the *Brooks* and *Margoles* suits. We will hold in abeyance our consideration of the class action motion in *Fenichal* pending our disposition of the outstanding motion to dismiss in that case, as is indicated in an earlier portion of our opinion.

Defendants first argue that subdivision (a)(4) of Rule 23, which requires that "the representative parties will fairly and adequately protect the interests of the class," is not met as the interests of the plaintiffs are not coextensive with those of the members of the proposed class. However, as Judge Weinstein stated in his exhaustive discussion of Rule 23 in Dolgow v. Anderson, 43 F.R.D. 472 (S.D.N.Y.1968), two requirements must be met in order to satisfy Rule 23(a)(4): first, there must be a close identity between the issues and interests of the representatives and the issues and interests of the unnamed persons, and second, the court must be assured that the representatives will "put up a real fight." *Id.* at 231, quoting Chafee, Some Problems of Equity 231 (1950). In our opinion, both of these requirements have been met by the plaintiffs in these actions.

The language of Rule 23 does not dictate that the interests of the representatives be "coextensive" with those of the class members. Federal courts are empowered to employ their discretion to the fullest extent to define classes of injured investors in a manner which will permit the utilization of the class action procedure. Dolgow v. Anderson, *supra*, 43 F.R.D. at 492. A rule requiring complete coextensivity of interests would necessarily destroy our ability to exercise such discretion and seriously impair the effectiveness of Rule 23. And although cases may speak

of coextensive interests in their discussion of the requirements of Rule 23(a)(4), the great majority of decisions involving this subsection are premised upon a consideration of the presence or absence of conflicting interests within the proposed class. *See e. g.,* Korn v. Franchard, 456 F.2d 1206 (2d Cir. 1972); Green v. Wolf Corp., 406 F. 2d 291 (2d Cir. 1968); Basch v. Talley Industries, Inc., 53 F.R.D. 14 (S.D.N.Y. 1971); Rosenblatt v. Omega Equity Corp., 50 F.R.D. 61 (S.D.N.Y.1970); 3B J. Moore, Federal Practice ¶23.07 [2], at 23-371 (1969). Professor Moore, in his discussion of Rule 23, cites and examines numerous cases in which class actions were upheld and in which a much less stringent test was applied:

> "The requirement that the interest of the representative party be coextensive with the interest of the entire class . . . is essentially an alternate way of saying that the claims or defenses of the representative parties are typical of the claims or defenses of the class or subclass. *But to be typical, the claim or defense need not always involve the same facts or law, provided there is a common basic element of fact or law." Id.*

And it is this test which has generally been employed by the courts in passing on such a question. *See* Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562–563 (2d Cir. 1968); Richland v. Cheatham, 272 F.Supp. 148 (S.D.N.Y.1967); 3B J. Moore, *supra,* at 23-371 et seq. (citing cases).

Given this background, it is our view that the *Brooks* and *Margoles* cases are clearly ripe for class action treatment and that neither case offends the requirements of Rule 23(a)(4).

The basic concept of commonality, a requirement which is prevalent throughout Rule 23 and is premised upon a fundamental recognition that representatives of a class must have interests which are not in opposition to the members of that class, must be interpreted to best effectuate the primary

purposes of the class action device, i. e., to give small investors a reasonable opportunity to vindicate their claims in a manner which will not place an undue financial burden upon them. It is in this light that we must approach the defendants' objections to the instant class actions under Rule 23(a)(3). Subsection (a)(3) of Rule 23 requires that the claims and defenses of the representative parties be "typical of the claims and defenses of the class." We believe that this requirement has been met in the instant cases.

▮ *Brooks* and *Margoles* both allege a common course of fraudulent conduct, on the part of each of the defendants, directed against all investors. The complaints rely upon purported violations of common statutory provisions and it would appear that those questions which are common to all investors are quite substantial. Essentially, we are faced with a "common nucleus of operative fact and issues" which makes these cases prime candidates for class action treatment. *See* Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal. 1967) (antitrust action); City of Philadelphia v. Morton Salt Co., 248 F.Supp. 506 (E.D.Pa.1965). The resolution, in one litigation, of these common questions relating to the existence, character, and materiality of the alleged misrepresentations is certainly a logical and widely acceptable manner in which to proceed. Certainly, if specific difficulties in the claims of individual members of the class should arise during the course of the proceeding, the Court has the authority to take whatever action may be appropriate, including the designation of subclasses or the denial of individual recovery, to assure the common personality of the class. However, until such disabling factors are brought to our attention and shown, by competent evidence, to exist in fact, we can discern no reason for denying the proposed class actions.

▮ Defendants also urge that subsection (a)(3) of Rule 23 is not met by the plaintiffs in that they are attempting to represent both persons who originally purchased Lum's debentures as well as their own interests as holders of common stock. It is contended that such representation results in a conflict within the class due to the fact that the interests of debenture holders may differ in many respects from the interest of shareholders.

Plaintiffs, in their brief, state that they only desire to represent persons who may originally have purchased Lum's debentures but who, thereafter, converted these debt securities into common stock. They reason that such conversions may well have been influenced by the same allegedly fraudulent representations as influenced those who made direct purchases of common stock. Furthermore, they invoke the opt-out provisions of Rule 23, Fed.R.Civ.P. 23(c)(2)(A), as available to purchasers who prefer to prosecute their own claims.

Although we are not certain that, in the instant situation, the claims of debenture holders, as they relate to the common questions which are the basis of these suits, would differ in any significant degree from those of shareholders,[32] in any case, denial of the class action motions would be inappropriate. Once it is determined to our satisfaction that that group of former debenture holders which the plaintiffs attempt to represent holds interests in conflict with the plaintiffs-shareholders, the provisions of Rule 23(c)(4)(B) authorize the creation of subclasses within the class. Fischer v. Kletz, 41 F.R.D. 377 (1966). However, as it is our feeling, at this time, that a sufficient identity of interests exists between the shareholders and that group of debenture purchasers which they desire to represent, the designation of subclasses would necessarily be premature. *See* Dolgow v. Anderson, *supra*, 43 F.R.D. at

---

32. *Compare* Complaint in *Channing with* the Complaints in *Brooks* and Margoles v. Powell.

492; Herbst v. Able, 278 F.Supp. 664 (S.D.N.Y.1967).

■ Defendants further contend that the individual questions of reliance and damages which are present in these cases present an insurmountable hurdle which, in effect, requires us to deny the class action despite the abundance of common issues which are here present. But this argument no longer has any substantial merit. Such reasoning, as is pointed out in Dolgow v. Anderson, *supra*, 43 F.R.D. at 490, would result in the virtual "emasculation" of Rule 23. *See* Siegel v. Chicken Delight, Inc., *supra*, 271 F.Supp. at 727. "The fact that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible." Dolgow v. Anderson, *supra*, 43 F.R.D. at 490. *See* Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968); Siegel v. Realty Equities Corp., 54 F.R.D. 420 (S.D.N.Y. 1972); Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1972); Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42, 45 (S.D.N.Y.1966) (the individual questions present "no difficulties not inherent in every class action.").

■ Furthermore, the recent decision of the Supreme Court in Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1971), a 10b–5 class action case, disposes of the necessity of proving reliance in a § 10(b) suit, requiring only that the plaintiffs show an obligation to disclose and a withholding of material facts in order to establish the requisite element of causation in fact. *Id.* at 154, 92 S.Ct. 1456. The reasoning of the Court on this question in *Affiliated Ute* would appear to be equally persuasive in connection with other complementary sections of the 1933 and 1934 Acts.

Therefore, in accordance with the above discussion, it is our conclusion that the requirements of Rule 23 have been met by the plaintiffs and that the motions for class action determinations in *Brooks* and Margoles v. Powell may be granted.

## SILVER

The contentions of the defendants in *Silver* are in substance, no different than the objections which were raised in *Brooks* and *Margoles*. Further discussion of these questions would serve no useful purpose. It is sufficient to note that the *Silver* suit adequately meets the requirements of Rule 23 and may proceed as a class action.

## ORDER

1. The motion of the Caesars Palace defendants to transfer Brooks v. Caesars World, Inc.; Fenichal v. Zarowitz; Kraut v. McElnea; Margoles v. Powell; and Silver v. Lum's Inc. to the District of Nevada will be held in abeyance pending further discovery.

2. The motion of the plaintiff in Margoles v. Lum's, Inc. to consolidate will be held in abeyance pending further discovery.

3. The motion of the Caesars Palace defendants to dismiss the first cause of action in Channing Securities, Inc. v. Caesars World, Inc. is denied without prejudice.

4. The motion of the Caesars Palace defendants to dismiss the second and third causes of action in *Channing* is granted unless the plaintiff, within twenty (20) days, files an amended complaint which includes specific allegations in conformity with the requirements of 15 U.S.C. § 77m.

5. The motion of the Caesars Palace defendants to dismiss the second, third, and fourth causes of action in *Channing* for reasons other than those covered in paragraph #4 above, is denied.

6. The motion of the Caesars Palace defendants to dismiss the causes of action in Brooks v. Caesars World, Inc., premised upon 15 U.S.C. § 78r, 15 U.S.C. § 78j(b), Rule 10b–5, 15 U.S.C. § 78m, 15 U.S.C. § 77q, and 15 U.S.C. § 78n(a) is denied.

7. The motion of the Caesars Palace defendants to strike in *Brooks* is denied.

8. The motion of the Caesars Palace defendants in Fenichal v. Zarowitz to dismiss the first cause of action is granted unless the plaintiff, within twenty (20) days, files an amended complaint in conformity with the above opinion.

9. The motion of the Caesars Palace defendants in Cope v. Caesars World, Inc. to dismiss the causes of action premised upon 15 U.S.C. § 78m and 15 U.S. C. § 78n(a) is denied. The motion of these same defendants to dismiss the cause of action premised upon 15 U.S.C. § 78j(b) and Rule 10b–5 is granted unless the plaintiff, within twenty (20) days, files an amended complaint in conformity with the above opinion.

10. The motion of the Caesars Palace defendants in Kraut v. McElnea to dismiss the causes of action premised upon 15 U.S.C. § 77q, 15 U.S.C. § 78j(b) and Rule 10b–5 is denied. The motion of these same defendants to dismiss the cause of action premised upon 15 U.S.C. § 77k is granted unless plaintiff files an amended complaint within twenty (20) days.

11. The motion of the Caesars Palace defendants in *Kraut* to dismiss the cause of action premised upon 15 U.S.C. § 78n(a) is denied.

12. The motion of the Caesars Palace defendants in *Kraut* for a more definite statement in connection with the causes of action premised upon 15 U.S.C. §§ 78r and 78s is granted and plaintiff is directed to file an amended complaint within twenty (20) days. The motion of these same defendants in *Kraut* to strike is granted in conformity with the above opinion.

13. The motion of the Caesars Palace defendants in Gregorio v. Sarno to dismiss for failure to comply with the requirements of Fed.R.Civ.P. 23.1 is denied.

14. The motion of the Caesars Palace defendants in *Gregorio* to dismiss the causes of action premised upon 15 U.S.C.

§ 78j(b), Rule 10b–5, and 15 U.S.C. § 78n(a) is denied.

15. The motion of the Caesars Palace defendants in *Gregorio* to strike the prayer for punitive damages is denied.

16. The motion of the Caesars Palace defendants in *Brooks, Fenichal, Kraut,* and *Gregorio* to dismiss for failure to join indispensable parties is denied without prejudice.

17. The motions of the plaintiffs in *Brooks, Silver,* and *Margoles v. Powell* for class action determinations are granted. The motion of the plaintiff in *Fenichal* and *Cope* for a class action determination is held in abeyance pending the filing of an amended complaint.

It is so ordered.