**Harry LEWIS, Suing as Chairman of the Webb & Knapp, Inc., et al., Plaintiffs,**

v.

**MARINE MIDLAND GRACE TRUST COMPANY OF NEW YORK et al., Defendants.**

**No. 68 Civ. 1764–ELP.**

United States District Court, S. D. New York.

Nov. 5, 1973.

tee. Each of these defendants has made identical motions for judgment on the pleadings pursuant to Rule 12(c), Fed. R.Civ.P., dismissing the amended and supplemental complaint filed on April 6, 1971 (hereinafter the "complaint") on the grounds that (1) it fails to state a claim upon which relief can be granted, and (2) this Court lacks jurisdiction over the subject matter.

Restating the motion, there are two major questions: (1) does the complaint state a cause of action under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 and thereby give this Court jurisdiction pursuant to § 27,[1] and (2) if there is a Rule 10b–5 cause of action, can the named defendants be held liable to the plaintiffs? For purposes of deciding this motion these questions are identical and are therefore considered simultaneously.[2]

In Count I plaintiffs allege that the officers and directors of Webb & Knapp, "pursuant to a plan or scheme," submitted false real estate and asset valuations to their accountants and the indenture trustee over a period of years in order to satisfy the asset-liability ratio stipulated in a negative covenant in the trust indenture.[3] Plaintiffs allege that Marine Midland and Harris-Kerr knew or should have known of the misrepresentations and as fiduciaries with respect to the debenture holders should have disclosed the violation of the trust indenture. Plaintiffs also allege that by virtue of this failure to disclose these defendants were aiders and abettors of Webb & Knapp's officers and directors. Plaintiffs allege damages resulting from the artificial inflation of the market prices of the debentures. Count II is a common law negligence claim against

Wolf Popper Ross Wolf & Jones, New York City, for plaintiffs; Donald N. Ruby, Howard L. Jacobs, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Marine Midland Grace Trust Co. of New York; John Dickey, James H. Carter, Jr., New York City, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Harris, Kerr, Forster & Co.; John Logan O'Donnell, Walter H. Beebe, A. Rene Hollyer, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Donovan, Leisure, Newton & Irvine, New York City, for Certain Individual defendants; Robert L. Laufer, Sanford M. Litvack, New York City, of counsel.

PALMIERI, District Judge.

### Motions to Dismiss

This is an action by purchasers and holders of Webb & Knapp debentures alleging violations of the Securities Exchange Act of 1934 by the officers and directors of Webb & Knapp, Harris-Kerr, the accountants of Webb & Knapp, and Marine Midland, the indenture trus-

---

1. Securities Exchange Act of 1934, §§ 10, 27, 15 U.S.C. §§ 78j(b), 78aa (1970); Rule 10b–5, 17 C.F.R. § 240.10b–5 (1973).

2. *See* Superintendent of Ins. v. Bankers Life & Casualty Co., 300 F.Supp. 1083, 1093 (S.

D.N.Y.1969), aff'd, 430 F.2d 355 (2d Cir. 1970), rev'd, 404 U.S. 6, 92 S.Ct. 165, 30 L. Ed.2d 128 (1971).

3. § 3.6(a); Complaint § 17.

Marine Midland based on pendent jurisdiction.

The main points raised by these motions are directed to the principal elements of a § 10(b) and Rule 10b–5 cause of action, that a "fraud" be committed within the meaning of this section and that it be "in connection with" a securities transaction. The question before this Court, then, is whether the allegations in the complaint will permit evidence which may establish circumstances sufficient to state a claim under § 10(b) and Rule 10b–5.[4]

### Causation

In addressing the first element of a fraud, that of causation in fact, defendants Harris-Kerr, the accountants, and Marine Midland, the indenture trustee, vigorously argue that plaintiffs have failed to aver circumstances justifying an allegation of reliance on any of their acts or representations. However, the Supreme Court has recently had occasion to confront this very question in Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). There the Court extended the principle of Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) to Rule 10b–5 actions. Mills was a shareholder class action under § 14(a) of the 1934 Act, 15 U.S.C. § 78n(a) (1970), alleging non-disclosure of material information in a proxy solicitation. Justice Harlan formulated a causation principle inferring constructive reliance from the materiality of the non-disclosure.[5] In Affiliated Ute the Supreme Court reversed the Tenth Circuit holding that "there was no violation of the Rule [10b–5] unless the record disclosed evidence of reliance on material fact misrepresentations" by specific defendants. 406 U.S. at 152, 92 S.Ct. at 1471. The Court held that:

> "Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision . . . . This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." 406 U.S. at 153, 92 S.Ct. at 1472.[6]

This decision moves the reliance test from the subjective inquiry of whether there was or could have been reliance to an objective standard of the reasonable investor's reliance.[7] Consequently the

4. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). See also Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673, 682 (N.D.Ind.1966) (motion to dismiss denied), 286 F.Supp. 702 (N.D.Ind. 1968) (on merits), aff'd, 417 F.2d 147 (7th Cir. 1969), cert. denied, 397 U.S. 989, 90 S. Ct. 1122, 25 L.Ed.2d 397 (1970).

5. See Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 373–375 (2d Cir. 1973). Judge Timbers characterized this as a "presumption of reliance where it is logical to presume that reliance in fact existed." At 374. Judge Mansfield, concurring and dissenting, vigorously disputed any inference of a presumption and stated his interpretation of the Mills-Ute result: "[T]he gravamen of the offense is now the material misrepresentation itself, from which reliance by a reasonable investor may be inferred as a matter of law, thus rendering unnecessary proof of actual subjective reliance." At 399.

6. Note that the causation requirement remains the focal point of this analysis. See The Supreme Court, 1971 Term, 86 Harv.L. Rev. 259, 271 & n. 272 (1972); 6 L.Loss, Securities Regulation 3880–83 (2d ed. 1961).

7. Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 398–399 (2d Cir. 1973) (Mansfield, J., concurring and dissenting); 1 A. Bromberg, Securities Law: Fraud —SEC Rule 10b–5, at §§ 8.4, 8.4(311) (Supp. 1970) [hereinafter cited as "Bromberg"]. In Chris-Craft, supra, the Second Circuit clearly adopted the Mills-Ute formulation of

test of reliance is merged with that of materiality and there ceases to be any substantive distinction between the two for purposes of total non-disclosure cases.[8]

In order to accommodate the realities of non-disclosure frauds, the standard of materiality in this kind of case has shifted from one emphasizing effects on market values of securities, List v. Fashion Park, Inc., 340 F.2d 457, 462–463 (2d Cir. 1965), cert. denied, 382 U. S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965); S. E. C. v. Texas Gulf Sulphur Co., 401 F.2d 833, 848 (2d Cir. 1968) (en banc), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), to a concept going beyond value and including the underlying motivation for the transaction, a reasonable investor standard. Affiliated Ute Citizens v. United States, *supra*, 406 U.S. at 153–154, 92 S. Ct. 1456, 31 L.Ed.2d 741 (1972); Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 362–363, 373–374, 398–400 (2d Cir. 1973); *cf.* Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 9–10, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).[9] The essence of the alleged "fraud" in this case is the intentional or grossly negligent non-disclosure by the defendants of a violation of a negative covenant in the trust indenture, a violation which by the terms of the trust indenture should have led to the mandatory recall of the entire debenture issue. Even without the imminent recall, plaintiffs' contention that they would not have bought the debentures if they had known that this provision of the trust indenture was being violated seems well within the purview of the *Mills-Ute* decisions. Certainly a primary criterion of a reasonable investor in evaluating a debenture purchase must be the viability of the underlying trust indenture, and where, as alleged here, serious doubt is cast on the compliance of the principals with its terms, such investor would of necessity attach considerable importance to that information. Moreover, the circumstances here would satisfy even the stricter test of materiality posited in S. E. C. v. Texas Gulf Sulphur Co., *supra*, 401 F.2d at 848, requiring reasonable certainty of a substantial effect on market prices.

On this basis it is clear that the causation-materiality allegations of the complaint are sufficient.

### Scienter

With respect to scienter, the complaint alleges, *inter alia*, that each defendant was in a fiduciary relationship with the plaintiffs, that each had actual knowledge of and approved the fraudulent scheme, that Marine Midland aided

materiality instead of reliance in instances where the latter is impractical, such as non-disclosure cases. 480 F.2d at 373–375. Although this case dealt with § 14(e) it must be regarded as an obvious precursor of an identical policy with respect to this issue in Rule 10b–5 cases. *See also* Vine v. Beneficial Finance Co., 374 F.2d 627, 635 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 797 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970).

8. Humbach, The Second Circuit Review, Securities, 39 Brklyn L.Rev. 1187, 1217 (1973). *See also* The Supreme Court, 1971 Term, 86 Harv.L.Rev. at 270–271: "The Supreme Court's adoption of an even more liberalized test indicates an especial willingness to depart from the formula of common law fraud in order to make Rule 10b–5 a more effective deterrent of deceptive practices . . . . this willingness to view the rule more flexibly than the related common law cause of action indicates that the Court would probably require only that the facts be material in [affirmative misrepresentation as well as non-disclosure cases.]"

9. *See* Cohen v. Franchard Corp., 478 F.2d 115, 124 & n. 12 (2d Cir. 1973); Lanza v. Drexel & Co., 479 F.2d 1277, 1320–1321 (2d Cir. 1973) (Hays, J., concurring and dissenting). *See also* Cox, Fraud is in the Eyes of the Beholder: Rule 10b–5's Application to Acts of Corporate Mismanagement, 47 N.Y.U.L.Rev. 674, 677–678 (1972) [hereinafter cited as "Cox"].

and abetted the scheme by failing to disclose it when it knew or should have known of the fraud, or was grossly negligent and reckless in failing to detect it, and that Harris-Kerr aided and abetted the scheme by carelessly and negligently accepting the misvaluations and certifying and submitting them recklessly, carelessly and without verification to Marine Midland.

Judge Medina addressed the issue of sufficiency of pleadings of scienter in Heit v. Weitzen, 402 F.2d 909, 914 (2d Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969):

> "The charge that defendants 'knew or should have known' adequately alleges actual knowledge of the falsity of the statements, and, alternatively, negligence or lack of diligence in failing to ascertain the true facts. If some form of scienter test is to be applied . . . we think the alternative allegation of actual knowledge of falsity is amply sufficient as a matter of pleading. And this would seem to be so whether the scienter test ultimately applied be strict or liberal." [10]

This complaint alleges that each defendant knew or should have known of the fraud. With respect to the officers of Webb & Knapp little more need be said. The complaint alleges that pursuant to a plan or scheme they submitted falsified figures over a period of years. It follows from the nature of this alleged fraud that they must have known the nature of their acts, both in planning and executing the fraud. In addition, it is virtually inconceivable that they did not know that such acts were illegal, or at the very least violated their fiduciary duties to the plaintiffs.

With respect to Marine Midland and Harris-Kerr, the problem could be much more difficult, but the fact remains that the complaint alleges that they had actual knowledge of the fraud.[11] If this allegation is true, it would be equally incredible for them to claim that they did not know that the acts were illegal. Consequently this allegation alone is sufficient to satisfy the scienter requirement.[12]

---

10. *See also* Globus v. Law Research Service, Inc., 418 F.2d 1276, 1291 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); In re Caesars Palace Securities Litigation, 360 F.Supp. 366, 376 (S.D.N.Y.1973). Bromberg begins his discussion of scienter with this encouragement: "[S]cienter is the most difficult and unsettled element of a 10b–5 private action." 2 Bromberg § 8.4(501), at 204.101. Unfortunately we are denied the satisfaction of confirming that conclusion by this qualification: "However bewildering the substantive law on scienter, it presents few pleading problems for plaintiff. It is enough for him to allege alternatively that defendant 'knew or should have known' of the act of violation." 2 Bromberg § 8.4(690), at 204.258. *Cf.* Katz v. Amos Treat & Co., 411 F.2d 1046, 1055 (2d Cir. 1969).

However, the Second Circuit has recently made it quite clear that it will require a relatively strict scienter element, *e. g.*, in order to state a Rule 10b–5 cause of action the complaint must allege "facts amounting to *scienter*, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud. It is insufficient to allege · mere negligence. . . ." Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 445 (2d Cir. 1971). *See also* Gerstle v. Gamble Skogmo, Inc., 478 F. 2d 1281, 1299–1300 (2d Cir. 1973); Lanza v. Drexel & Co., 479 F.2d 1277, 1301–1302 (2d Cir. 1973); Cohen v. Franchard Corp., 478 F.2d 115, 123–124 (2d Cir. 1973); Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 363, 396–398 (2d Cir. 1973). *Contra*, Hays, J. dissenting on this issue in Lanza v. Drexel & Co., *supra*, 479 F.2d at 1318–1319. For a list of cases from other circuits which have ruled that scienter is not essential and that negligence is sufficient, *see id.* at 3119.

11. *See* Fed.R.Civ.P. 8(e)(2); Sprayregen v. Livingston Oil Co., 295 F.Supp. 1376, 1378 (S.D.N.Y.1968).

12. Even the allegation that defendants "should have known" of the fraud would be sufficient. On its face this language has been thought to exclude actual scienter and refer to "mere negligence," Ruder, Multiple Defendants in Securities Law Fraud Cases:

### Privity

The officers and directors of Webb & Knapp stand as the primary defendants on this complaint. They are alleged to be the instigators and initiators of the fraud and Webb & Knapp was, of course, the original issuer of the debentures. Indeed, these defendants do not seriously press an argument of nonprivity between themselves and the plaintiffs. Thus, regardless of the nuances of the privity requirement in its present posture, we think it clear that these defendants satisfy even the most traditional elements and the § 10(b) and Rule 10b–5 claims are well stated against them in this respect.

■ However, the indenture trustee and the accountants vigorously argue that their relationships with plaintiffs were such that they cannot be held liable for the acts of Webb & Knapp officers. While no court has yet completely abandoned a requirement of some legally cognizable relationship between plaintiffs and defendants, Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701, 706 (S.D.N.Y.1951), aff'd, 198 F.2d 883 (2d Cir. 1952); S. E. C. v. Texas Gulf Sulphur Co., *supra*, 401 F.2d at 867 (Friendly, C. J., concurring), it is nevertheless well established in this circuit that the traditional element of privity is not a prerequisite to Rule 10b–5 liability. Iroquois Industries v. Syracuse China Corp., 417 F.2d 963, 967–968 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); In re Caesars Palace Securities Litigation, 360 F.Supp. 366, 376 (S.D.N.Y.1973). On this complaint as it now stands, and in light of the early stage of discovery, and with a view towards further, well-directed discovery delineating the precise nature of the relevant relationships, we think that it is indeed possible that a relationship between plaintiffs and these defendants within the scope of the statute may be established. Cochran v. Channing Corp., 211 F.Supp. 239, 244–245 (S.D.N.Y.1962); In re Caesars Palace Securities Litigation, *supra*, 360 F.Supp. at 376–377.

■ Moreover, we think that this complaint makes out a cause of action against these defendants on a secondary liability theory. There is now little doubt that § 10(b) and Rule 10b–5 liability can be extended to aiders and abettors. Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673, 680–681 (N.D.Ind.1966).[13]

Essential elements of aider and abettor liability are scienter, discussed above, and substantial assistance by the defendants to the primary wrongful conduct. Brennan v. Midwestern Life Insurance Co., *supra*, 259 F.Supp. at 680; Fischer v. Kletz, 266 F.Supp. 180, 197 (S.D.N.Y. 1967). With respect to the latter plaintiffs allege that Harris-Kerr, the accountants, despite their knowledge of the falsity of the figures, accepted them and subsequently certified and submitted

---

Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution, 120 U.Pa.L.Rev. 597, 632–633 (1972), and the defendants consistently refer to it as such. However, in this regard the complaint clearly refers to recklessness and gross negligence on the part of these defendants and these are terms that give rise to a legal presumption of knowledge. *See* Republic Technology Fund, Inc. v. Lionel Corp., 483 F.2d 540, 551 (2d Cir. 1973); Lanza v. Drexel & Co., 479 F.2d 1277, 1306 (2d Cir. 1973); Cohen v. Franchard Corp., 478 F.2d 115, 123 (2d Cir. 1973); Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341, 363 (2d Cir. 1973); S.E.C. v. Texas Gulf Sulphur

Co., 401 F.2d 833, 854–855 (2d Cir. 1968) (en banc), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). *See also* Ruder, *supra*, 120 U.Pa.L.Rev. at 634–635. The allegation that these defendants "aided and abetted" each other in the fraud would also independently satisfy the scienter requirement because the element of knowledge is inherent in the definition of "aiding and abetting." *See* In re Caesars Palace Securities Litigation, 360 F.Supp. 366, 388 (S.D.N.Y.1973).

13. *See also* R. Jennings and H. Marsh, Securities Regulation: Cases and Materials 1181 (3d ed. 1972).

them to Marine Midland, the indenture trustee. They also allege that Marine Midland accepted the figures knowing them to be false, and that they failed to call the entire issue in default pursuant to the terms of the trust indenture on the basis of their knowledge of the actual facts. Thus it is plausible to argue that these defendants were essential links in the perpetration of the fraud and that each committed affirmative acts in its furtherance, i. e., the accountants certified and submitted the figures and the indenture trustee accepted and presumably used the figures, at least to the extent of justifying an annual decision not to call the issue on the basis of a violation of the trust indenture.

The essence of secondary liability lies in the culpable nature of the conduct of the defendants. If the elements alleged in the complaint are substantiated, there can be little doubt of the culpability of all of the defendants as knowing participants in a fraudulent scheme. At this point this conclusion is equally applicable to the accountants. Extending liability to accountants presents a special and difficult problem. However, on the basis of these allegations, Harris-Kerr stands in a position of culpability of sufficient magnitude to warrant further factual development before the question of dismissal as to them can be adequately evaluated.

*The "in connection with" requirement*

Having determined that the complaint states a fraud within the scope of § 10(b) and Rule 10b–5, we turn to the question of whether that fraud was "in

connection with" a securities transaction.

Defendants' fundamental position is that the complaint merely alleges acts of corporate mismanagement which do not fall within the scope of the securities acts and are solely redressable in the state courts. But in advancing this argument defendants are guilty of the very brand of illogic that they attribute to the plaintiffs; they invoke the rubric of mismanagement "as a supplicant would a deity"[14] without addressing the critical issue of why this particular kind of mismanagement is not "in connection with a securities transaction." Although there is no question that § 10(b) was not directed at fraudulent mismanagement,[15] it is equally clear that allegations in a complaint may state a claim under § 10(b) and Rule 10b–5 which would also be actionable in state court as a mismanagement claim.[16]

Here debenture purchasers allege participation by *all* of the defendants in a scheme to *intentionally* perpetrate a misconception about a critical clause in the trust indenture, with the effect of artificially inflating the market price of the debentures. While conceding the relative ease of characterizing many acts of mismanagement as affecting securities transactions by extension, upon viewing the totality of the circumstances as set out in this complaint there does appear to be a direct nexus between the alleged fraud and the sale of the debentures.

 Regardless of the underlying motivation for these fraudulent activities,[17] it hardly seems disputable

---

14. Memorandum for Defendant Marine Midland Grace Trust Co. at 13.

15. *See, e. g.*, Birnbaum v. Newport Steel Corp., 193 F.2d 461, 463–464 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); Lester v. Preco Industries, Inc., 282 F.Supp. 459, 462 (S.D.N.Y.1965).

16. *Cf.* Jennings and Marsh, *supra* note 13, at 1223.

17. Plaintiffs are undoubtedly correct that defendants' argument that they neither benefited nor cared about the fraud is specious. The scienter requirement is directed at knowledge of or participation in the *fraud*, not at the common law requirement of intent to cause injury to a particular plaintiff. *Cf.* 6 L.Loss, Securities Regulation 3887–3888 (2d ed. 1961); The Supreme Court, 1971 Term, 86 Harv.L.Rev. at 269–270 n. 10; Cox, 47 N.Y.U.L.Rev. at 683; Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d

that its most obvious and immediate effect was the artificial maintenance of the market for the debentures. With the mandatory recall of the issue imminent upon the abandonment or discovery of the false asset valuations, it would seem to strain credulity to characterize the attendant bond transactions as incidental or ancillary to the primary fraudulent scheme or objective.[18]

However, despite defendants' protestations to the contrary, it is unnecessary to go even that far in drawing the relationship between the fraudulent activities and securities transactions. The recent decision of the Supreme Court in Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), rev'g 430 F.2d 355 (2d Cir. 1970), aff'g 300 F. Supp. 1083 (S.D.N.Y.1969), has explicitly expanded the coverage of Rule 10b–5 by loosening the strictures of the "in connection with" requirement. The extent of that expansion is indeterminate, but it is hardly disputable that the quantum of relationship deemed necessary in previous cases has been reduced by this decision.

The lower courts have traditionally couched their assessment of the impact of alleged frauds on securities transactions in terms of the interests they perceive as intended for protection by § 10(b).[19] It was in this context that the Supreme Court loosened the strictures by rejecting the circuit court's narrow reading of § 10(b) as "limited to preserving the integrity of the securities markets," (language originally used in Pettit v. American Stock Exchange, 217 F.Supp. 21, 28 (S.D.N.Y.1963)), and concluding that although that purpose was included, § 10(b) "must be read flexibly, not technically and restrictively." 404 U.S. at 12, 92 S.Ct. at 169. The Court held that the plaintiff "suffered an injury as a result of deceptive practices *touching* its sale of securities as an investor." (Emphasis added). *Id.* at 12–13, 92 S.Ct. at 169.

By this line of reasoning it is probably not unreasonable to conclude that in *Bankers Life* the unanimous Supreme Court (Justices Powell and Rehnquist not sitting) intentionally avoided the language previously used by the lower courts to the effect that a securities transaction cannot be merely "incidental" to a fradulent scheme or objective.[20]

The case at bar is unique. *Bankers Life*, as well as its predecessors, are readily distinguishable on their facts. We are therefore constrained to view this complaint in the framework of the broad remedial purpose of the securities act [21] and the relevant trends in its judicial interpretation.[22] On this basis this complaint alleges a fraud "in connection with" securities transactions and not unrelated acts of mere corporate mismanagement. Therefore, the complaint is sufficient in this respect. However, this conclusion is, of course, subject to revision on the basis of further factual development as the discovery proceedings progress.

341, 362–363 (2d Cir. 1973) ; *see generally* S. E. C. v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 194–195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963).

18. Such cases as Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963) ; Lester v. Preco Industries, Inc., 282 F.Supp. 459 (S.D.N.Y.1965) ; and Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967) fostered the notion that a securities transaction had to be an integral aspect of the fraudulent scheme.

19. *See, e. g.,* cases cited note 18 *supra.*

20. *See* Cox, 47 N.Y.U.L.Rev. at 680–681.

21. *See* S. E. C. v. Texas Gulf Sulphur Co., 401 F.2d 833, 858–860 (2d Cir. 1968) ; Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673, 680 (N.D.Ind. 1966). *Cf.* J. I. Case Co. v. Borak, 377 U.S. 426, 431–432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

22. *Cf.* Kohler v. Kohler Co., 319 F.2d 634, 637–638 (7th Cir. 1963).

### Conclusion

■ In sum, the complaint adequately sets forth the prerequisite elements of a fraud within the meaning of § 10(b) and Rule 10b–5 and the alleged fraud falls within the ambit of the "in connection with" clause of the statute. However, it is particularly apropos, in the light of the nature of this complaint, to advert to the standing premise in this circuit that motions such as this should be granted only with the greatest reluctance when plaintiffs have not yet had an opportunity to resort to discovery proceedings to elicit information in the exclusive control of the defendants to substantiate the allegations of the complaint. Schoenbaum v. Firstbrook, 405 F.2d 215, 218 (2d Cir. 1968), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L. Ed.2d 219 (1969); Robinson v. Penn Central Co., 58 F.R.D. 436, 440 (S.D.N. Y.1973).

The motions are denied without prejudice to a renewal, if warranted, upon further amplification of the factual background.

### Motion to Amend

Plaintiffs move for leave to file a second amended and supplemental complaint pursuant to Fed.R.Civ.P. 15 reasserting claims under the Trust Indenture Act of 1939 which were in substance included in the original complaint and then deleted, under circumstances more fully set forth below, in the first amended and supplemental complaint. Since the motion is a request for a second amendment, the determination of this motion lies in the discretion of the Court. Fed.R.Civ.P. 15(a).[23]

The pertinent chronology of this case begins with the filing of the initial complaint by plaintiff Lewis in state court in April, 1967. Defendant Marine Midland moved to dismiss the class representation aspects of that suit. While decision on that motion was pending, Lewis commenced a similar action in this court on May 1, 1968. That complaint contained claims under the Securities Act of 1933, 15 U.S.C. § 77a et seq. (1970); Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (1970); and the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa et seq. (1970), as well as pendent state claims. In June 1968 defendants moved to dismiss for failure to state a claim upon which relief could be granted, lack of particularity in the complaint as to the alleged fraud, and lack of subject matter jurisdiction. Defendants represent in their briefs, and plaintiffs do not dispute, that a substantial portion of the arguments in the briefs on that motion were directed to the Trust Indenture Act claims. Defendants represent that the Trust Indenture Act issues were extensively briefed during 1968 and 1969, and argument was held before the late Judge Herlands of this court in 1969. Judge Herlands died before rendering a decision and the motion was assigned to the late Judge McGohey by an order dated October 9, 1969. Simultaneously the underlying action was assigned to this Court.

With that motion pending before Judge McGohey, plaintiffs moved in this court, on January 12, 1970, for leave to file an amended and supplemental complaint omitting the Trust Indenture Act claims. Defendants subsequently consented to the amendment and the motion

23. Fed.R.Civ.P. 15(a):
 "*Amendments.* A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served.

Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. . . ."
Fed.R.Civ.P. 1:
 "[These rules] shall be construed to secure the just, speedy, and inexpensive determination of every action."

to dismiss was consequently mooted. On February 1, 1971, this Court granted leave to file the first amended and supplemental complaint; it was served in April and defendants answered in May. On March 3, 1971, the Second Circuit issued a decision in a related case arising out of the same transactions as this one, Caplin v. Marine Midland Grace Trust Co., 439 F.2d 118 (2d Cir. 1971) (en banc), aff'd, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). That decision contained a footnote by Judge Friendly intimating, without deciding, that a cause of action might be stated under § 315 of the Trust Indenture Act.[24] 439 F.2d at 123 n. 5.

On October 6, 1971, defendants moved for dismissal of the first amended and supplemental complaint for failure to state a claim upon which relief could be granted and for lack of federal jurisdiction. On November 11, 1971, prior to answering that motion, plaintiffs brought this motion for leave to file a second amended and supplemental complaint reasserting their Trust Indenture Act claims on the basis of Judge Friendly's footnote in *Caplin*.

Pursuant to a motion by defendant Marine Midland, on February 29, 1972, this Court stayed all pending motions and discovery pending the outcome of a Supreme Court review of the *Caplin* case. The Supreme Court issued its decision on May 22, 1972, and it too intimated by way of a footnote, without deciding, that a cause of action might be stated under the Trust Indenture Act. 406 U.S. at 426–427 n. 17, 92 S.Ct. 1678.

In November and December of 1972 the defendants filed their memoranda with respect to the pending motions. On January 30, 1973, plaintiffs filed memoranda supporting their motion and opposing defendants' motions to dismiss. A hearing on the pending motions was held before this Court on April 4, 1973. Thus, despite the passage of some five years since the commencement of this action, for all practical purposes, the case is still in its initial stages. The delays cannot all be attributed to the plaintiffs. Nevertheless, while lengthy delay is not *per se* a basis for denying leave to amend, Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380, 384–385 (2d Cir. 1968); Green v. Wolf Corp., 50 F. R.D. 220, 223 (S.D.N.Y.1970), it may, under certain circumstances, be a predicate for a finding of bad faith. *See* Vine v. Beneficial Finance Co., 374 F.2d 627, 630–657 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L. Ed.2d 460 (1967) (affirming Judge Bonsal's bad faith rationale for denying leave to amend where the new information alleged in the complaint was within plaintiff's knowledge before argument on a motion to dismiss the first amended complaint); *see also* Green v. Wolf Corp., *supra.*

Plaintiffs claim that the impetus for this motion came from Judge Friendly's suggestion in his opinion, subsequently bolstered by Justice Marshall's similar comments. Plaintiffs' attorneys assert that their reason for making this motion is "solely [a] desire to fully protect the interests of the class of debenture holders represented by them in this action."[25] They argue that their motivation in withdrawing this theory of action in the first place was to simplify the issues in this case in recognition of the fact that the theory presented one of first impression. They claim that they felt able to do this because of the knowledge that Caplin was pursuing this theory on behalf of their clients in his case. However, Caplin's case was finally dismissed for lack of standing, and they now feel that they must resurrect this theory to insure full vindication of their clients' rights. It should be noted that the resurrection of claims is not in and of itself objectionable. *See*

---

24. 15 U.S.C. § 77*ooo* (1970).

25. Reply Brief for Plaintiff at 3–4.

*generally* Deakyne v. Comm'rs of Lewes, 416 F.2d 290, 297–299 (3d Cir. 1969).

Defendants hotly dispute this alleged motive, arguing that the motion is a "calculated tactical ploy" to extend the life of the suit beyond a decision on the defendants' current motion and to present the defendants with a "moving target" so that they cannot nail the plaintiffs down to their basic arguments. Defendants argue that in fact the very reason that they consented to the first amendment was so that the battle lines would be drawn and conclusive litigation could commence.

This, of course, amounts to an inconclusive swearing contest. Nevertheless, the fact remains that in this sequence of events plaintiffs served their ·first amended and supplemental complaint one month *after* the Second Circuit's decision without any forewarning that it did not represent their true position on the case, and then plaintiffs delayed some seven months after the Second Circuit decision in making this motion. Plaintiffs clearly knew of the "new" issue inasmuch as it represented a substantial part of their original complaint, and their present justification for reintroducing the issue was available and must have been known to them prior to their service of the first amended and supplemental complaint deleting the issue.

It is notable that only after the Trust Indenture Act count in the initial complaint was extensively briefed did the parties work out the arrangement whereby the defendants consented to the first amendment deleting this count and withdrew their own motion to dismiss. Defendants' contention that they were induced to consent to the first amendment abandoning this issue on the implicit representation by plaintiffs that it would be a permanent abandonment and that they would not be forced to relitigate at a later date seems eminently reasonable.

Yet plaintiffs have offered no persuasive factors negating the voluntariness of their prior decision to abandon the proposed theory of action nor do they offer any explanation for their behavior except, perhaps, for their recitation of the hardly debatable premise that pleading under the Federal Rules is not a game of skill.[26]

Clearly at some point there must be an end finally to a particular litigation, Friedman v. Transamerica Corp., 5 F.R. D. 115, 116 (D.Del.1946), and the Court and the defendants become entitled to place some reliance on the positions asserted by the plaintiffs. Defendants' argument that plaintiffs are equitably estopped from reintroducing this count is persuasively urged, both on the basis of plaintiffs' seemingly unjustifiable, or at the very least, infelicitous timing in serving the first amended and supplemental complaint, Friedman v. Transamerica Corp., *supra,* 5 F.R.D. at 116, and also because of the tacit implications of defendants' consent to the first amendment. Rogers v. Valentine, 426 F.2d 1361, 1363 (2d Cir. 1970).

Taken as a whole, these considerations would represent "good and sufficient" reasons for denying this motion. *See* Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); 3 J. Moore, Federal Practice § 15.08[4], at 897–900 (1964). From an equitable viewpoint, these plaintiffs sought to have their day in court on this issue, and they abandoned it.

Yet the new footnotes add support to their position on this motion since they do represent a change of conditions over which the plaintiffs had no control, albeit some knowledge. County of Marin v. United States, 150 F.Supp. 619, 623 (N.D.Cal.1957); System Federation No. 152, Ry. Employees' Dep't v. Pa. R.R. Co., 272 F.Supp. 971, 973–974 (S.D.N. Y.1967). In the light of the present posture of the case, with discovery at the threshold stage, Glazer Steel Corp. v.

**26.** United States v. Hougham, 364 U.S. 310, 316–317, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960).

Yawata Iron & Steel Co., 56 F.R.D. 75, 79 (S.D.N.Y.1972), they are sufficiently decisive to outweigh the equitable factors militating against the plaintiffs.

█ Moreover, the primary consideration in assessing this motion to amend is the potential prejudice that it would work on the defendants. United States v. Hougham, 364 U.S. 310, 316, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960); Ricciuti v. Voltarc Tubes, Inc., 277 F.2d 809, 814 (2d Cir. 1960). Despite defendants' vigorous protestations to the contrary, it is difficult to see what substantial prejudice will inure to their detriment by the introduction of a new legal theory at this stage of the litigation. The operative facts remain the same and the introduction of the new theory will not noticeably affect what will surely be extensive discovery in any event, nor will it have any consequential effect on the ultimate trial date. By the same token, lost motion in the past and the prospect of some additional litigation in the future do not work any obvious impairment of defendants' ability to defend in this case. Middle Atlantic Utilities Co. v. S. M. W. Development Corp., *supra*, 392 F.2d at 386.

Plaintiffs' second amended and supplemental complaint alleges, *inter alia*, that defendants have violated eight sections of the Trust Indenture Act.[27] Upon careful consideration of this new cause of action, and with due regard to the footnotes alluded to above, we have concluded that these counts are neither frivolous nor patently insufficient. Key Pharmaceuticals, Inc. v. Hans Lowey, 54 F.R.D. 447, 449 n. 5 (S.D.N.Y.1972); Glazer Steel Corp. v. Yawata Iron & Steel Co., *supra*, 56 F.R.D. at 77, 80.

We have also undertaken a careful analysis of the statute of limitations contained in § 323(a) of the Trust Indenture Act.[28] *See* Middle Atlantic Utilities Co. v. S. M. W. Development Corp., *supra*, 392 F.2d at 385–386. That section provides that "[n]o action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." While it is true that some of the allegations in the proposed second amended and supplemental complaint appear to be inconsistent, if not contradictory, we are persuaded that it does allege facts which, if substantiated, will satisfy the time limitations of this section. The ambiguity in this regard arises from inconsistent allegations of pertinent dates in paragraph 9 of Count I, which is not incorporated in Counts II and IV, the "new" counts, and paragraphs 32 and 34(A)(i) of Count II. At this point we will accord the plaintiffs the benefit of the doubt and presume that those dates that fall within the time limitation represent their intended position.[29]

These conclusions have not been arrived at without some difficulty. Prolonged consideration has left the Court with the conviction that this complex litigation, both in the interests of the Court and the litigants, should encompass all the issues so that a final and definitive adjudication can be reached. This end can be better served by granting the motion for leave to amend than by denying it. In essence, the plaintiffs will inject another legal theory for recovery into the case and not, apparently, any novel factual situations.

Plaintiffs' motion for leave to file a second amended and supplemental complaint is therefore granted.

27. Sections 313, 314, 315, 318, 322(b), 323, 325, 326, 15 U.S.C. §§ 77mmm, 77nnn, 77ooo, 77rrr, 77vvv(b), 77www, 77yyy, 77zzz (1970).

28. 15 U.S.C. § 77www (1970).

29. *Cf.* Bush v. Masiello, 55 F.R.D. 72, 79 (S.D.N.Y.1972).

### Stay of Federal Court Proceeding

It appears that there are two cases pending before the courts of the State of New York, Lewis v. Marine Midland Grace Trust Co., New York Supreme Court, New York Co. Index No. 15099/1967 (filed April 28, 1967), and Ray v. Marine Midland Grace Trust Co., New York Supreme Court, New York Co. Index No. 2159/1967 (filed May 22, 1967), which, in certain respects, relate to this case. This Court is therefore presented with the question of whether or not the federal case should properly be stayed pending the resolution of the state court proceedings. *See* Brown v. Bullock, 29 F.R.D. 184, 185 (S.D.N.Y.1961); *cf.* Milk Drivers & Dairy Emp. U. v. Dairymen's League Co-Op. Ass'n, 304 F.2d 913, 915 (2d Cir. 1962); Mottolese v. Kaufman, 176 F.2d 301, 302–303 (2d Cir. 1949).

On July 8, 1968, the New York Supreme Court dismissed the *Lewis* suit insofar as it alleged a representative cause of action (New York Supreme Court, Special Term, Part I, order filed August 9, 1968, Telesford, J.). From the statements of counsel in this case it appears that following that dismissal no further proceedings were had and none will be hereafter because the economic burdens on the individual remaining plaintiff preclude him from continuing the suit.

In the *Ray* case, on June 7, 1973, the Appellate Division of the New York Supreme Court (App.Div., 1st Dep't, Order No. M–1694) granted the defendant leave to appeal its decision (App.Div., 1st Dep't, Affirmance of Order, No. 6676, April 5, 1973, 41 A.D.2d 906, 342 N.Y.S.2d 641) affirming the Supreme Court's denial of the defendant's motion to dismiss the action insofar as it alleged a representative suit (N.Y.L.J., June 28, 1968, at 12, col. 2).

The complaint in *Ray* alleges causes of action arising out of the same circumstances which gave rise to the instant suit. Although the underlying acts would appear to be very nearly identical, the legal theories upon which they are predicated are entirely different as between the federal and state suits. *Ray* is, presumably, based upon common law tort liability while the complaint in this suit alleges violations of Rule 10b–5, 17 C.F.R. § 240.10b–5 (1973) under § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970). It does appear, however, that the plaintiffs have stated identical causes of action to those in *Ray* in their counts based on pendent jurisdiction.

■■ The plaintiffs' claims under § 10(b) and Rule 10b–5 are cognizable only in the federal district courts. Securities Exchange Act of 1934 § 27, 15 U.S.C. § 78aa (1970); Abramson v. Pennwood Investment Corp. 392 F.2d 759, 762 (2d Cir. 1968). Additionally, the essential elements of a claim of a violation of the securities laws differ substantially from those of common law fraud. *See, e. g.,* Wellington Computer Graphics, Inc. v. Modell, 315 F.Supp. 24, 26 (S.D.N.Y.1970); 1 A. Bromberg, Securities Law: Fraud § 2.7, at 55–58 (1967). As the Ninth Circuit has pointed out in the case of Mach-Tronics, Inc. v. Zirpoli, 316 F.2d 820, 824 (9th Cir. 1963):

"[W]hen a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction. [Citations omitted] It has also been considered to be the rule that when a federal court is presented with a case of which it has cognizance it may not turn the matter over for adjudication to the state court, and that the pendency of an action in the state court is no bar to the proceedings concerning the same matter in the federal court. . . ."

*See also* Movielab, Inc. v. Berkey Photo, Inc., 321 F.Supp. 806, 811 (S.D.N.Y. 1970); C. Wright, Law of Federal

Courts § 52, at 205 (2d ed. 1970). Because the New York court lacks subject matter jurisdiction over plaintiffs' § 10(b) and Rule 10b–5 claims, any final decision of that court would not have a *res judicata* effect here. Wellington Computer Graphics, Inc. v. Modell, *supra,* 315 F.Supp. at 27. A final decision on issues common to both actions might collaterally estop relitigation here; however, in light of the early stage of both cases this problem is purely speculative and therefore cannot be regarded as a basis for staying this action. *Id.* at 26–27; Movielab, Inc. v. Berkey Photo, Inc., *supra,* 321 F.Supp. at 810; *cf.,* Essex Systems Co. v. Steinberg, 335 F.Supp. 298, 301 (S.D.N.Y.1971).

The pendent state claims stated in the plaintiffs' complaint clearly derive from "a common nucleus of operative fact" with the federal claims and are such that the plaintiffs "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Considerations of judicial economy, convenience and fairness to the litigants, 383 U.S. at 726, as well as the tendency to require plaintiffs to try their whole case at one time, 383 U.S. 725 n. 13; Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 320, 47 S.Ct. 600, 71 L.Ed. 1069 (1927); Rosenfeld v. Schwitzer Corp., 251 F.Supp. 758, 763 (S.D.N.Y.1966), dictate acceptance of jurisdiction over the pendent claims under the circumstances of this case. Questions of collateral estoppel as between state and federal proceedings, if any arise, may of course be raised at such time as they do arise. *Cf.* Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 322–327, 349–350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Zdanok v. Glidden Co., 327 F.2d 944, 954–956 (2d Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). This Court's consideration of these pendent state claims should not, therefore, be stayed but, rather, should be heard along with the federal securities law claims. Consequently, it is the opinion and decision of this Court that a stay of the pending proceedings is inappropriate and will not issue.

### Conclusion

Pursuant to what has been said above the Court has reached the following decisions:

(1) the motions to dismiss are denied without prejudice;

(2) the motion for leave to file a second amended and supplemental complaint is granted; and

(3) a stay of this action is not warranted.

It is so ordered.